1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

| | |
|---|---|
| JOHN CAVAZOS, *on behalf of himself and all others similarly situated*,<br><br>                              Plaintiff,<br><br>        v.<br><br>SALAS CONCRETE, INC.,<br><br>                              Defendants. | Case No.: 1:19−CV−00062−DAD−EPG<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>ORDER SETTING FINAL APPROVAL HEARING<br><br>(ECF No. 27) |

18    Plaintiff John Cavazos's Motion for Preliminary Approval of Class Action Settlement

19 (ECF No. 27) came before the Court for hearing on April 24, 2020. Attorney David Spivak

20 appeared telephonically on behalf of Plaintiff; attorney James Miller appeared on behalf of

21 Defendant, Salas Concrete, Inc. For the reasons set forth below, the Court recommends that

22 Plaintiff's unopposed motion for preliminary approval be granted, subject to the findings and

23 recommendations set forth herein, including a recommendation that the settling parties be

24 required to revise the Notice of Class Action Settlement.

25                                            **I.   BACKGROUND**

26    Defendant is a California corporation and a licensed concrete contractor that provides a

27 wide range of concrete services, including supplying, forming, reinforcing, pouring, finishing,

28 and resurfacing concrete. Plaintiff began working for Defendant in 2011 as an hourly

1

1  construction worker in Clovis, California, and continued to work for Defendant until

2  September 19, 2018, when Defendant terminated Plaintiff's employment.

3       On January 11, 2019, Plaintiff, on behalf of himself and other similarly situated

4  employees, sent a written notice to the California Labor and Workforce Development Agency

5  ("LDWA") and to Defendant of specific California Labor Code provisions Plaintiff alleges

6  Defendant violated.

7       On January 14, 2019, Plaintiff, as an individual and on behalf of himself and all others

8  similarly situated, filed the present action against Defendant. (ECF No. 1.) On March 27,

9  2019, Plaintiff filed a first amended complaint ("FAC"). (ECF No. 8.) The FAC alleges the

10  following wage and hour claims against Defendant on behalf of Plaintiff and the proposed

11  class: (1) Failure to pay minimum and overtime wages in violation of the Federal Labor

12  Standards Act ("FLSA"); (2) Failure to pay all wages earned for all hours worked at the

13  correct rates of pay; (3) Failure to provide rest breaks; (4) Failure to provide meal periods;

14  (5) Failure to indemnify; (6) Wage statement penalties; (7) Waiting time penalties; (8) Unfair

15  competition; and (9) Civil penalties under the Private Attorneys General Act ("PAGA"). (*Id.*)

16       On April 22, 2019, Defendant filed an answer to the FAC in which Defendant denied

17  liability. (ECF No. 14.)

18       During the class certification discovery phase, Plaintiff sought from Defendant the names

19  and contact information of putative class members and the parties agreed to a *Belaire-West*[1]

20  Notice to putative class members. The parties retained ILYM Group, Inc. ("ILYM") to provide

21  for a *Belaire-West* Notice to putative class members. The Court approved the parties'

22  stipulation to use this procedure for discovery of putative class member identities and contact

23  information. (ECF No. 18.) Defendant provided ILYM with the names and contact information

24  for 39 putative class members to whom ILYM mailed notice.

25

---

26       [1] *Belaire-West Landscape, Inc. v. Superior Court (Rodriguez)*, 149 Cal. App. 4th 554 (2007). "In wage and hour collective actions, fellow employees would not be expected to want to conceal their contact information from plaintiffs asserting employment law violations, the state policies in favor of effective enforcement of these laws weigh on the side of disclosure, and any residual privacy concerns can be protected by issuing so-called *Belaire-West* notices affording notice and an opportunity to opt out from disclosure." *Williams v. Superior Court*, 398 P.3d 69, 84 (Cal. 2017).

On November 6, 2019, the parties participated in a mediation session with the Honorable Steven M. Vartabedian, retired Associate Justice for the California Court of Appeals for the Fifth Circuit. At the conclusion of the settlement, the parties reached the material terms of a settlement (the "Settlement"). The Settlement was reached after substantial exchanges of data, information, and documents before and during the mediation, and after extensive negotiations. Prior to and during the mediation, and before agreeing to the terms of the Settlement, the parties engaged in informal discovery. Defendant produced time-keeping records and payroll and time information for putative class members. (ECF No. 27-2 at 3.)

In January 2020, the parties formally entered into the Settlement Agreement. (ECF No. 27-2 at 27-58.)[2] The Settlement covers the "Class" or "Settlement Class," which is defined as "all current and former California hourly, non-exempt employees Salas Concrete, Inc. employed during the Class Period." (ECF No. 27-2 at 29.) The Class Period is in turn defined as "January 14, 2015 through November 6, 2019." (*Id.* at 30.) "Class Member" or "Settlement Class Member" is defined as "any person who is a member of the Settlement Class, or, if such person is incompetent or deceased, the person's legal guardian, executor, heir or successor-in-interest." (*Id.*) "Class Claimant" is defined as "any and all Class Members who do not submit a valid and timely Opt Out Request as provided herein." (*Id.*)

"Claims" are defined under the Settlement as "the claims asserted in the First Amended Complaint, including any claim arising out of the facts alleged in the First Amended Complaint and all matters released in Article X[3] of [the Settlement Agreement]." (*Id.* at 29

---

[2] The Settlement Agreement is titled "Joint Stipulation of Class Action Settlement and Release." (ECF No. 27-2 at 27.)

[3] Article X of the Settlement Agreement provides that, upon the effective date,

each Class Member who has not submitted a timely Opt-Out Form, and the Named Plaintiff releases the Released Parties, and each of them, if and from any and all Released Claims through the end of the Claims Period.

It is the desire of the Parties and the Class Members to fully, finally, and forever settle, compromise, and discharge the Released Claims.

As such, the Class Members understand and agree that they are providing the Released Parties with a full and complete release with respect to the Released Claims through the end [of] the Claims Period. It is agreed that this Stipulation is intended to fully and finally resolve the Released

1  (footnote added).) "Released claims" are defined as any and all claims "arising out of the facts

2  and circumstances alleged in the First Amended Complaint during the Claims Period. . . ." (*Id.*

3  at 33.)

4       Defendant agrees to pay a Gross Settlement Amount in the amount of $175,000 and, in

5  addition, agrees to pay Defendant's employer-side payroll taxes.[4] The Gross Settlement

6  Amount is proposed to be distributed as follows: (1) Class attorneys' fees not to exceed

7  $58,333, which is 33 1/3% of the Gross Settlement Amount; (2) Class attorneys' expenses not

8  to exceed $15,000; (3) incentive award to class representative not to exceed $10,000; (4)

9  administrative expenses not to exceed $5,000; (5) a $4,000 PAGA award, with 75 percent to

10 be paid to the LWDA pursuant to California Labor Code § 2699(i) and 25 percent to be paid to

11 the Class Members; and (6) distribution of the Net Settlement Amount to all Class Claimants,

12 less taxes and required withholding associated with each Class Claimant's share of the

13 Individual Settlement Amount. (ECF No. 27-2 at 38-42.) The estimated Net Settlement

14 Amount is $83,666. (*Id.* at 33.) The "Individual Settlement Amount," which is "the amount

15 which is ultimately distributed to each Class Claimant, net of any Taxes and Required

16 Withholdings," is estimated to be, on average, $2,091. (*Id.* at 32.) The amount of each Class

17 Claimant's share will be calculated based on the number of pay periods worked by the

18 Settlement Class Member while employed by Defendant during the Class Period. (*Id.* at 45-

19 46.)

20      The Settlement requires Defendant to deposit with the Settlement Administrator, within

21

22

---

23    Claims via final judgment as to each and every Class Member, except as to those who timely
submit Opt-Out Requests.

24    Each Class Member, except those who timely Opt-Out, will be bound to the release of the
Released Claims as a result of the Settlement and to the final judgment entered in the Action.

25 (ECF No. 27-2 at 50.)

26    [4] "Gross Settlement Amount" is defined as "the total amount, not to exceed One Hundred Seventy-Five
Thousand Dollars ($175,000), that will be paid by Defendant to the Class Members in full settlement of the

27 Released Claims asserted in this case, the Administrative Expenses, Taxes and Required Withholdings, Incentive
Award and Class Attorney's Fees and Expenses. Defendant's share of any applicable payroll taxes shall be solely

28 satisfied by Defendant separate and apart from the Gross Settlement Amount." (ECF No. 27-2 at 32.)

1    ninety (90) days of the "effective date" of the Settlement Agreement,[5] one seventh (1/7th) of

2    the funds sufficient to pay the Gross Settlement Amount and one seventh (1/7th) of

3    Defendant's related employer-side payroll taxes. (ECF No. 27-2 at 41.) Every 180 days

4    thereafter, Defendant is to deposit an additional one seventh (1/7th) of the funds sufficient to

5    pay the Gross Settlement Amount and one seventh (1/7th) of Defendant's employer-side

6    payroll taxes, until Defendant has fully paid the Gross Settlement Amount and its employer-

7    side payroll taxes. (*Id.* at 41-42.) Funds are to be distributed from the Gross Settlement

8    Amount, as designated above, no later than fourteen (14) days after Defendant has deposited

9    all funds required under the Settlement Agreement with the Settlement Administrator. (*Id.* at

10   46-47.)

11        The Settlement Agreement also contains a provision that allows Defendant to void the

12   Settlement. (ECF No. 27-2 at 49.) Under this provision: "[i]f Class Members representing

13   more than twenty percent (20%) of the Class's pay periods timely submit Opt-Out Requests,

14   Defendant shall have the exclusive right to void this Settlement." (*Id.*)

15        On March 20, 2020, Plaintiff filed the instant unopposed motion for preliminary

16   approval of the settlement. (ECF No. 27.) Plaintiff seeks an order (1) conditionally certifying

17   the proposed Settlement Class; (2) preliminarily approving the Settlement; (3) approving, only

18   for purposes of the Settlement, the appointment of Plaintiff as Class Representative;

19   (4) approving, only for purposes of the Settlement, the appointment of the Spivak Law Firm

20   and United Employees Law Group as Class Counsel; (5) approving, as to form and content,

21   the Notice of Proposed Class Action Settlement and Final Hearing, attached to the Settlement

22

23        [5] "Effective Date" is defined as

24        The date when all of the following events have occurred: (a) this Stipulation has been executed by all Parties
          and by Class Counsel and Defense Counsel; (b) the Court has given preliminary approval to the Settlement;
          (c) notice has been given to the Class Members providing them with an opportunity to Opt-Out of the

25        Settlement; (d) the Court has held a Final Approval and Fairness Hearing and entered a final order and
          judgment certifying the Class and approving this Stipulation; and (e) the later of the following events: the

26        expiration of the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement
          has elapsed without any appeal, writ, or other appellate proceeding opposing the Settlement with no right to

27        pursue further remedies or relief; or any appeal, writ, or the issuance of such other final appellate order
          upholding the Court's final order with no right to pursue further remedies or relief.

28   (ECF No. 27-2 at 31.)

Agreement; (6) appointing, only for purposes of the Settlement, Simpluris, Inc., as the

Settlement Administrator; and (7) setting a fairness hearing for final approval of the

Settlement.

## II.  LEGAL STANDARD

A court tasked with determining whether to approve a proposed class action settlement

will almost always be required to engage in a "difficult balancing act." *Allen v. Bedolla*, 787

F.3d 1218, 1223 (9th Cir. 2015). "On the one hand, … 'there is a strong judicial policy that

favors settlements, particularly where complex class action litigation is concerned.'" *Id.*

(citations omitted). "But on the other hand, 'settlement class actions present unique due

process concerns for absent class members,' and the district court has a fiduciary duty to look

after the interests of those absent class members." *Id.* (citations omitted). "The dangers of

collusion between class counsel and the defendant, as well as the need for additional

protections when the settlement is not negotiated by a court-designated class representative,

weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)."

*Hanlon*, 150 F.3d at 1026.

"To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of

Civil Procedure requires court approval of all class action settlements, which may be granted

only after a fairness hearing and a determination that the settlement taken as a whole is fair,

reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th

Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th

Cir. 2003) (court's role is to police the "inherent tensions among class representation,

defendant's interests in minimizing the cost of the total settlement package, and class

counsel's interest in fees").

The Rule 23 class settlement process generally proceeds in two phases. In the first phase,

the court conditionally certifies the class, conducts a preliminary determination of the fairness

of the settlement (subject to a more stringent final review), and approves the notice of class

action settlement to be provided to the class. *Ontiveros v. ZaCavazos*, 303 F.R.D. 356, 363

(E.D. Cal. 2014). The purpose of this preliminary review is to ensure that an appropriate class

1   exists, and that the agreement is non-collusive, without obvious deficiencies, and within the

2   range of possible approval as to that class. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d

3   1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014).

4        In the second phase, the court holds a full fairness hearing where class members may

5   present objections to class certification, or to the fairness of the settlement agreement.

6   *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401,

7   1408 (9th Cir. 1989)). Following the fairness hearing, the settlement may proceed only if,

8   taking into account all of the information before the court, the court confirms that class

9   certification is appropriate, and that the settlement is fair, reasonable, and adequate. *See Valdez*

10  *v. Neil Jones Food Co.*, 2015 WL 6697926, at *8 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA*

11  *Logistics USA, Inc.*, 2015 WL 4730176, at *3 (E.D. Cal. Aug. 10, 2015).

12                                **III.  DISCUSSION**

13  **A.  Conditional Class Certification**

14       When the parties have entered into a settlement agreement before the district court

15  certifies the class, the court "must pay 'undiluted, even heightened, attention' to class

16  certification requirements. . . . " *Staton*, 327 F.3d at 952–53 (citations omitted). For class

17  certification, the classes and sub-classes "must meet the four threshold requirements of Federal

18  Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of

19  representation." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (citing Fed. R.

20  Civ. P. 23(a); *Hanlon*, 150 F.3d at 1019. The proposed class must also satisfy the requirements

21  of Rule 23(b), which defines the three different types of classes allowed. Fed. R. Civ. P. 23(b);

22  *Leyva*, 716 F.3d at 512. The plaintiff bears the burden of demonstrating that the requirements

23  of Rule 23 have been satisfied as to the proposed class. *See Wal-Mart Stores, Inc. v. Dukes*, 564

24  U.S. 338, 350 (2011); *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

25  "A court that is not satisfied that the requirements of Rule 23 have been met should refuse

26  certification until [those requirements] have been met." Advisory Committee 2003 Note on

27  Fed. R. Civ. P. 23(c)(1).

28       As discussed below, the requirements for class certification in Rule 23(a) and (b) are

1    satisfied here. *See Leyva*, 716 F.3d at 512.

2            1.   Rule 23(a) Requirements

3                   a.   Numerosity

4            A proposed class must be "so numerous that joinder of all members is impracticable."

5    Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific

6    facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal*

7    *Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Courts in the Ninth Circuit have

8    found the requirement satisfied when the class is composed of as few as thirty-nine members.

9    *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v.*

10   *L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-

11   four, and seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other*

12   *grounds*, 459 U.S. 810, 103 (1982)).

13           Here, the proposed class is defined as: "[A]ll current and former California hourly, non-

14   exempt employees Salas Concrete, Inc., employed during the Class Period." (ECF No. 27-2 at

15   29.) The parties estimate that the class has 39 class members.[6] Plaintiff contends that it would

16   be impractical and economically inefficient to require each of these class members to

17   separately maintain an individual action or be joined as a named plaintiff in the present action.

18           The Court agrees and finds that Plaintiff has demonstrated that the numerosity

19   requirements of Rule 23(a)(1) are satisfied. *See Patrick v. Marshall*, 460 F. Supp. 23, 29 (N.D.

20   Cal. 1978) (certifying class with at least thirty-nine potential members); *see also Hernandez v.*

21   *Cnty. of* Monterey, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015) (A class or subclass with more

22   than 40 members "raises a presumption of impracticability [of joinder] based on numbers

23   alone.").

24   ///

25           2.   Commonality

26           Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

27   ────────────────────

28           [6] At the time the motion was filed, it was estimate that the class consisted of 40 members. (ECF No. 27-1 at 12). However, during the April 24, 2020, the settling parties indicated that there are 39 members.

R. Civ. P. 23(a)(2). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.* "All questions of fact and law need not be common to satisfy the rule." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* To satisfy commonality, there must be a "common contention … of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff can meet this burden by showing "[s]ignificant proof that an employer operated under a general policy" of harmful conduct if the conduct "manifested itself in hiring and promotion [and other employment] practices in the same general fashion . . . ." *Id.* at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)).

Here, Plaintiff contends that there are many predominant common questions. All class members were subject to the same or similar operations and employment policies, practices, and procedures. The claims arise from Defendant's alleged uniform policy of failing to properly account for all time worked and failing to provide off-duty meal and rest periods, failing to pay minimum and overtime wages, failing to provide accurate written wage statements, failing to reimburse for expenses, and failing to timely pay all final wages. Finally, there are common questions of law and fact regarding Defendant's alleged unlawful practices, the ability of Class Members to take lawful meal and rest periods, and derivative liability for wage statement and final wages violations. These include whether Defendant failed to pay minimum and overtime wages to Class Members; failed to provide the Class Members with all meal and rest periods; failed to pay required premiums for workdays with unprovided meal and rest breaks; failed to pay Class Members for all hours worked at the correct rates; knowingly and intentionally failed to provide Class Members with accurate wage statements; and failed to indemnify and reimburse Class Members for expenses, including mobile phone and travel expenses. (ECF No. 27-1 at 19-20.) Plaintiff contends that the answers to these and

1   other common questions could determine Defendant's liability to Class Members on the core

2   of claims in this action, as well as derivative claims for statutory and civil penalties. (*Id.* at 19-

3   20.)

4   The Court finds that Plaintiff has demonstrated that the commonality requirements of

5   Rule 23(a)(2) are satisfied. *See Wal-Mart*, 564 U.S. at 350.

6   3.   Typicality

7   Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

8   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Armstrong v.*

9   *Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This typicality requirement is satisfied "when each

10   class member's claim arises from the same course of events, and each class member makes

11   similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see*

12   *also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where

13   named plaintiffs have the same claims as other members of the class and are not subject to

14   unique defenses). While representative claims must be "reasonably co-extensive with those of

15   absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020;

16   *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

17   Here, Plaintiff contends that his claims are typical for the purposes of certifying the

18   Class. Plaintiff, like the proposed Class Members, was subject to the same relevant policies

19   and procedures governing his compensation, hours of work, and meal and rest periods. He

20   contends he was not compensated for overtime work, was not provided off-duty meal and rest

21   periods, and was not reimbursed for use of his personal phone and travel expenses. Thus, he

22   was subject to the same general course of conduct as other proposed Class Members and

23   resolving the common questions as they apply to Plaintiff will determine Defendant's *prima*

24   *facie* liability to all Class Members. Plaintiff's claims could also potentially be subject to the

25   same primary affirmative defenses as those of the other proposed Class Members. (ECF No.

26   27-1 at 20-21.)

27   The Court finds that Plaintiff has demonstrated that the typicality requirement of Rule

28   23(a)(3) is satisfied because the claims of Cavazos, the class representative, is reasonably co-

1  extensive with those of the absent proposed Class Members.

2      4.  Adequacy of Representation

3      Before the Court can certify a class, the Court must be satisfied that "the representative

4  parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

5  "[A] class representative must be part of the class and 'possess the same interest and suffer the

6  same injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26

7  (1997) (citations omitted). "The proper resolution of this issue requires that two questions be

8  addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with

9  other class members and (b) will the named plaintiffs and their counsel prosecute the action

10  vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th

11  Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

12      Here, Plaintiff class representative, Cavazos, has submitted evidence that there is no

13  conflict of interest between himself and the rest of the class. Cavazos represents that he and the

14  absent proposed Class Members have strong and co-extensive interests in this litigation

15  because they all worked for Defendant during the relevant time period, allegedly suffered the

16  same alleged injuries from the same alleged course of conduct, and there is no evidence of any

17  conflict of interest between him and the absent proposed Class Members. (ECF No. 27-1 at 12;

18  ECF No. 27-2 at 5-6; ECF No. 27-4 at 3-4.) Plaintiff states that he has demonstrated his

19  commitment to the proposed Class by, among other things, retaining experienced counsel,

20  providing counsel with documents and extensively speaking with counsel to assist in

21  identifying claims asserted in this case, assisting counsel in contacting the proposed Class

22  Members and gathering information from them, meaningfully participating in the mediation

23  and subsequent negotiations that led to the proposed settlement, and exposing himself to the

24  risk of an award of attorneys' fees and costs against him if the complaint had been

25  unsuccessful. (*Ibid*.)

26      The Court finds that Plaintiff, Cavazos, satisfies the adequacy of representation

27  requirement.

28      Next, Plaintiff seeks appointment of his current counsel, Spivak Law and United

1   Employees Law Group, as Class Counsel. The attorneys at these firms have prosecuted this

2   action on behalf of Plaintiff and the proposed Class since the commencement of the litigation;

3   and have significant experience in employment litigation generally, and wage and hour and

4   employment-related class action litigation specifically. (ECF No. 27-1 at 21; ECF No. 27-2 at

5   5-8.; ECF No. 27-3 at 3.)

6          The Court finds that Plaintiff class representative's current counsel, Spivak Law and

7   United Employees Law Group, satisfies the adequacy requirements for appointment as class

8   counsel with respect to the proposed class.

9   **B.   Rule 23(b) Requirements**

10         Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of

11  law or fact common to class members predominate over any questions affecting only

12  individual members, and that a class action is superior to other available methods for fairly and

13  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S.

14  at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v.*

15  *Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521

16  U.S. at 623–24).

17         1.   Predominance

18         First, questions of law or fact common to class members must predominate over any

19  questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance

20  inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by

21  representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). "This analysis

22  presumes that the existence of common issues of fact or law have been established pursuant to

23  Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule

24  23(b)(3)." *Id.* ("In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between

25  the common and individual issues."). "When common questions present a significant aspect of

26  the case and they can be resolved for all members of the class in a single adjudication, there is

27  clear justification for handling the dispute on a representative rather than on an individual

28  basis." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

1   Practice & Procedure § 1778 (2d ed.1986)).

2       Here, Plaintiff asserts that common questions to Class Members raised in this action

3   predominate over any individualized questions. The Court agrees. As discussed above, the

4   complaint alleges that Defendant failed to pay minimum and overtime wages to Class

5   Members; failed to provide the Class Members with all meal and rest periods; failed to pay

6   required premiums for workdays with unprovided meal and rest breaks; failed to pay Class

7   Members for all hours worked at the correct rates; knowingly and intentionally failed to

8   provide Class Members with accurate wage statements; and failed to indemnify and reimburse

9   Class Members for expenses, including mobile phone and travel expenses. Although some of

10  the claims may not apply to all Class Members, the common claims predominate over any

11  individualized questions and the claims appear to be ones that can be resolved for all members

12  of the class in a single adjudication.

13      The Court finds that the predominance requirement is met here for purposes of certifying

14  the Class for settlement purposes only. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20

15  (1997).

16      2.  <u>Superiority</u>

17      Under Rule 23(b)(3), a class action must be "superior to other available methods for

18  fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters

19  pertinent to this finding include: "(A) the class members' interests in individually controlling

20  the prosecution or defense of separate actions; (B) the extent and nature of any litigation

21  concerning the controversy already begun by or against class members; (C) the desirability or

22  undesirability of concentrating the litigation of the claims in the particular forum; and (D) the

23  likely difficulties in managing a class action." *Id.; see Amchem*, 521 U.S. at 616.

24      Here, Plaintiff contends that a class action is superior to other available means for the fair

25  and efficient adjudication of the claims because most of the proposed Class Members stand to

26  recover damages in relatively small amounts, and a class action serves as the only method that

27  permits the proposed Class Members to pool and pursue claims that would be uneconomical to

28  litigate individually. The Court agrees and finds that "[t]his case involves multiple claims for

1 relatively small individual sums. . . . If plaintiffs cannot proceed as a class, some – perhaps

2 most – will be unable to proceed as individuals because of the disparity between their litigation

3 costs and what they hope to recover." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v.*

4 *Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001); *see Phillips Petroleum Co. v. Shutts*,

5 472 U.S. 797, 809 (1985) (class actions can provide a mechanism for plaintiffs to pool claims

6 that "would be uneconomical to litigate individually"); Wright, Miller & Kane, *supra, at* §

7 1779 ("[I]f a comparative evaluation of other procedures reveals no other realistic possibilities,

8 this [superiority] portion of Rule 23(b)(3) has been satisfied.").

9      Further, it is unlikely that individual members of the proposed Class have any interest in

10 individually controlling the prosecution or defense of individual actions, and any proposed

11 Class Member who wants to pursue an individual claim can opt out of the proposed settlement.

12      Lack of knowledge of the legal system and limited economic resources would also likely

13 deprive most Class Members of the opportunity to pursue their claims outside of a class action.

14 Class action treatment will allow these similarly situated workers to litigate their claims in the

15 manner that is most efficient and economical for the parties and the judicial system. There also

16 does not appear to be any related pending litigation.

17      Finally, there are no apparent difficulties likely to be encountered in managing this class

18 action.

19      The Court finds that the superiority requirement is met here.

20 **C.   Preliminary Fairness Determination**

21      Plaintiff requests preliminary approval of the Settlement Agreement. (ECF No. 27-1 at

22 23-42; *see* 27-2 at 27-73 (Settlement Agreement).)

23      To approve a proposed settlement agreement that will bind absent class members, the

24 Court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P.

25 23(e)(2); *see also Bluetooth*, 654 F.3d at 946. When settlement occurs before class

26 certification, the Court must also take extra care to ensure that "the settlement is not the

27 product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946. Although the

28 factors in a court's fairness assessment will vary from case to case, courts generally must

weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Id.* (citations omitted). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citations omitted).

Here, after balancing the relevant factors, the Court finds preliminary approval of the Settlement to be appropriate.

Plaintiff represents that the Settlement was reached after informed, arm's length negotiations among experienced counsel with the assistance of a highly regarded mediator and after sufficient discovery was exchanged to assess the relative strengths and weaknesses of the case and Defendant's estimated exposure. (ECF No. 27-1 at 24-25; ECF No. 27-2 at 11-12.) Plaintiff explains that this discovery included substantial exchanges of data, information and documents, including Defendant's financial records. (*Ibid.*) Plaintiff also explains that the financial condition of Defendant, discussed in more detail below, is the primary factor in the decision to accept the settlement on behalf of the proposed Class.

Based on the representations of counsel, the Court finds that the proposed settlement was the product of serious, informed, arm's-length negotiations by the parties. *See Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:42 (4th ed.2002)); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (citations omitted)).

As to the amount of the proposed settlement, in determining whether the amount offered

1   is fair and reasonable, a court compares the proposed settlement to the best possible outcome

2   for the Class. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). "It is well-

3   settled law that a cash settlement amounting to only a fraction of the potential recovery does

4   not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213

5   F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted).

6           Here, Plaintiff estimates the total damages (maximum recoverable wages, unreimbursed

7   expenses, and penalties) for the proposed class at $3,700,000, without taking into account any

8   risks. (ECF No. 27-1 at 26-28; ECF No. 27-2 at 13-15.) In contrast, the amount of the

9   proposed settlement is only $175,000, with an average estimated share for each class claimant

10  of $2,091. (ECF No. 27-2 at 32.) Thus, the proposed settlement amount is only 4.7% of the

11  estimated total damages.

12          The significant disparity between the estimated total damages and the proposed

13  Settlement raises a red flag and is a significant concern to the Court. However, the Court finds,

14  based on the representations of the parties, that the financial condition of Defendant justifies

15  this disparity and the amount of the proposed Settlement.

16          According to Plaintiff, Defendant's tax returns for 2016 through 2018 show that

17  Defendant operated at a loss in 2016 and 2018 and earned only a meager profit in 2017. (ECF

18  No. 27-1 at 25; ECF No. 27-2 at 12.) Plaintiff also explains that Defendant's sole shareholder,

19  who is 65 years old, stated convincingly that he would seek bankruptcy protection and shut

20  down the business if the litigation continued. (*Ibid.*) According to Plaintiff, Defendant's assets

21  include only vehicles (with little or negative equity), bobcats, utility work machines, tools, and

22  office machines, all of low value, and neither Defendant nor its sole shareholder own any real

23  property or have any significant cash reserves. The sole shareholder's only significant asset is

24  his personal pick-up truck, which has minimal value. (*Ibid.*) Further, Plaintiff explains that

25  even if he were to prevail on all claims at trial, and obtain a large class action judgment,

26  recovery of the judgment would be unlikely due to Defendant's financial condition and the

27  risk of Defendant's insolvency. (*Ibid.*) If Defendant goes out of business, the proposed Class

28  Members are not likely to be able to recover any damages and will be left with nothing.

1        Although the financial condition of Defendant is the primary motivating factor in

2   reaching the settlement agreement, Plaintiff cites to additional risks of continued litigation.

3   (*See* ECF No. 27-1 at 28-33; ECF No. 27-2 at 15-19.) For example, Plaintiff believes that there

4   is a substantial risk that a court could reduce civil penalties to an insignificant amount if

5   unpersuaded that Defendant intentionally violated the law. Plaintiff points out that Defendant

6   denies liability, denies that it engaged in any intentional wrongful conduct, and has witnesses

7   (both supervisors and other employees) that will testify in support Defendant's position and in

8   contradiction of Plaintiff's position. (*Ibid.*)

9        The poor financial condition of Defendant and the likelihood that if litigation proceeds,

10  Defendant will seek bankruptcy protection and shut down operations entirely, creating a

11  significant risk that the proposed Class would recover nothing, as well as the other risks cited

12  by Plaintiff, convince the Court that the proposed settlement amount of $175,000 is fair and

13  reasonable.

14       Of the $175,000 settlement amount, the parties have allocated $4,000 to settle the claim

15  for penalties under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code

16  § 2698, *et seq.* Of the $4,000, seventy-five percent (75%) or $3,000, will be paid to the Labor

17  Workforce and Development Agency ("LWDA") and twenty-five percent (25%) or $1,000

18  will be distributed to the proposed Class.

19       Plaintiff contends that $4,000 in settlement of the PAGA penalties claim is appropriate

20  because the Class's claims are primarily for unpaid wages and unreimbursed expenses and not

21  for penalties,[7] and because civil penalties under the PAGA are difficult to predict in view of

22  the PAGA's reduction provisions, which allow a court to award a lesser amount than the

23  maximum civil penalty if, to do otherwise, would result in an unjust, arbitrary and oppressive,

24  or confiscatory award. *See* Cal. Labor Code § 2699(e)(2).

25

26       [7] Plaintiff also states that spreadsheets used in calculating total estimated damages, including penalties, are attached to Plaintiff's counsel's declaration, as Exhibit 6. (*See* ECF No. 27-2 at 13.) Although there is a single page

27  attached to the declaration stating it is "Exhibit 6," there are no spreadsheets attached. The Court assumes that the supporting spreadsheets were inadvertently omitted. The Court cautions Plaintiff that such spreadsheets should be

28  provided with its motion for final approval.

1    Plaintiff cites to *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018), which

2  affirmed a trial court's imposition of a $5 per violation penalty, rather than the maximum $50

3  per violation penalty, and declined to impose penalties for additional statutory violations.

4  Plaintiff contends that, under the logic of *Carrington*, the proposed Class would not recover

5  more than $67,540 in civil penalties ($5 x 13,508 workdays). (ECF No. 27-2 at 14-15.)

6  Plaintiff also notes that a court could award no civil penalties if it determined that an award of

7  premium wages was sufficient to punish Defendant's conduct. (ECF No. 27-1 at 32-33; ECF

8  No. 27-2 at 15.) Plaintiff goes on to explain that it is extremely difficult to prove that wage and

9  hour violations are knowing, intentional, or willful, which is needed to recover penalties. For

10  these reasons, counsel dramatically discounted the value of civil penalties in negotiating the

11  Settlement. (*Ibid.*)

12    The Court finds the proposed settlement of the PAGA penalties claim for $4,000 to be

13  fair and reasonable There is no indication that the negotiated settlement amount for the PAGA

14  penalties claim was the result of self-interest.

15    Moreover, in light of Defendant's position that any violations were not knowing,

16  intentional, or willful, and the apparent existence of witnesses that would testify on

17  Defendant's behalf that there was a good faith attempt by Defendant to comply with wage and

18  hour laws, imposing the maximum PAGA penalty for each violation might be found to be

19  unjust, arbitrary, and oppressive. *See Carrington*, 30 Cal. App. 5th at 528-29.

20    Finally, the proposed PAGA settlement amount, which is 2.3% of the proposed total

21  settlement amount, is similar to settlements that have been approved by other courts. *See, e.g.*,

22  *Ahmed v. Beverly Health & Rehab. Servs., Inc.*, 2018 WL 746393, at *10 (E.D. Cal. 2018)

23  (approving PAGA settlement of $4,500, or 1% of the total settlement amount); *Hicks v. Toys*

24  *'R' Us–Delaware, Inc.*, 2014 WL 4703915, at *1 (C.D. Cal. 2014) (approving PAGA

25  settlement of $5,000 or 0.12% of the total settlement amount); *Schiller v. David's Bridal, Inc.*,

26  2012 WL 2117001, at *2 (E.D. Cal. 2012) (approving PAGA settlement of $7,500 or 0.14% of

27  the total settlement amount); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801 at *14

28  (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement

amount); *Garcia v. Gordon Trucking*, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27 % of the total settlement amount); *Munoz v. UPS Ground Freight, Inc.*, 2009 WL 1626376, at *1 (N.D. Cal. 2009) (approving PAGA settlement of $60,000 or 2% of the total settlement amount); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *9 (N.D. Cal. 2009) (approving PAGA settlement of $1,500 or .037% of the total settlement amount); *Nordstrom Com'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving PAGA settlement and release allocating $0 to PAGA claim).

**D.   Payment by Defendant and Distribution of Total Settlement Amount**

1.   Payment by Defendant

Under the proposed Settlement, within ninety (90) days of the Effective Date,[8] and every 180 days thereafter until the Gross Settlement Amount of $175,000 is paid in full, Defendant is required to deposit with the Settlement Administrator one seventh (1/7) of the funds sufficient to pay the Gross Settlement Amount plus Defendant's employer-side payroll taxes on the funds constituting wages under the Settlement Agreement. (ECF No. 27-2 at 41.) The parties anticipate that Defendant will have fully paid the Gross Settlement Amount and its employer-side payroll taxes through seven equal payments within 39 months of the Effective Date. (*Id.* at 42.)

During the April 24, 2020, hearing the parties explained that this payment plan is needed due to the financial condition of Defendant. As also discussed during the hearing, the Court is concerned with this protracted payment plan and the risk that Defendant will default. However,

---

[8] "Effective Date" is defined as follows:

"Effective Date" shall be the date when all of the following events have occurred: (a) this Stipulation has been executed by all Patties and by Class Counsel and Defense Counsel; (b) the Court has given preliminary approval to the Settlement; (c) notice has been given to the Class Members providing them with an opp01tunity to Opt-Out of the Settlement; (d) the Court has held a Final Approval and Fairness Hearing and entered a final order and judgment certifying the Class and approving this Stipulation; and (e) the later of the following events: the expiration of the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or the dismissal of any appeal, writ, or other appellate proceeding opposing the Settlement with no right to pursue further remedies or relief; or any appeal, writ, or the issuance of such other final appellate order upholding the Court's final order with no right to pursue further remedies or relief.

(ECF No. 27-2 at 31.)

1  in light of the representations of the parties regarding the financial condition of Defendant and

2  the resulting need for the payment over time of the Gross Settlement Amount, it appears that

3  the payment plan is reasonable.

4          2.   Distribution of Funds

5          Under the Settlement Agreement, no funds are to be distributed until after Defendant has

6  deposited all funds due (the Gross Settlement Amount of $175,000 plus Defendant's related

7  employer-side payroll taxes). (*See* ECF No. 27-2 at 46-47.) Within fourteen (14) days

8  following the deposit by Defendant of all funds due, the Settlement Administrator is required to

9  distribute the funds in the amounts as approved by the Court for attorneys' fees and expenses to

10  be paid to Class Council; for any incentive award to be paid to named Plaintiff; and for the

11  75% of the PAGA award to be paid to LWDA. (*Id.*) Within twenty-eight (28) days following

12  the deposit by Defendant of all funds due, the Settlement Administrator is to make every effort

13  to pay taxes and required withholding associated with each Class Claimant's Individual

14  Settlement Amount and mail the Individual Settlement Amount (less such taxes and required

15  withholding) to each Class Claimant at their last known address. (*Id.* at 47.)

16          Again, the protracted process of receiving payment from Defendant and the risks of

17  default, as well as the delay in the receipt by Class Claimants of payment, raises concern.

18  During the April 24, 2020, hearing, the Court and the parties discussed the possibility of having

19  funds distributed upon the receipt of each one-seventh (1/7) payment by Defendant. However,

20  the parties informed the Court that this would increase significantly the costs of administering

21  the settlement and thus significantly reduce the amount available for distribution to Class

22  Claimants. In light of this representation, the Court finds the delay in distribution until after

23  Defendant has deposited all funds due to be reasonable.

24  **E.   Fees, Costs, and Representative Incentive Award**

25          1.   Attorneys' Fees

26          Courts "have an independent obligation to ensure that the award [of attorneys' fees], like

27  the settlement itself, is reasonable, even if the parties have already agreed to an amount*." In re*

28  *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *see also Consumer*

1    *Privacy Cases*, 175 Cal. App. 4th 545, 555 (2009) ("The court has a duty, independent of any

2    objection, to assure that the amount and mode of payment of attorneys' fees are fair and

3    proper, and may not simply act as a rubber stamp for the parties' agreement.").

4          Where, as here, fees are to be paid from a common fund, the relationship between the

5    class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys.*

6    *Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a

7    fiduciary role for the class members in evaluating a request for an award of attorney fees from

8    the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

9          In evaluating the award of attorneys' fees, "courts have discretion to employ either the

10   lodestar method or the percentage-of-recovery method." *Bluetooth*, 654 F.3d at 942 (citations

11   omitted); *see also Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 27, 53 (2000) (noting

12   the same for state law claims in cases involving a common fund). Under either approach,

13   "[r]easonableness is the goal, and mechanical or formulaic application of either method, where

14   it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life*

15   *Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002); *see also Consumer Privacy*

16   *Case*s, 175 Cal. App. 4th at 557-58 (same).

17         Under the percentage of the fund method, the court may award class counsel a given

18   percentage of the common fund recovered for the class; in the Ninth Circuit, the benchmark

19   for such an award is twenty-five percent (25%). *Fischel*, 307 F.3d at 1007, 1047-48; *see also*

20   *Bluetooth*, 654 F.3d at 942. Special circumstances that could justify varying the benchmark

21   award include when counsel achieves exceptional results for the class, undertakes extremely

22   risky litigation, generates benefits for the class beyond simply the cash settlement fund, or

23   handles the case on a contingency basis. *See In re Online DVD-Rental Antitrust Litig.*, 779

24   F.3d 934, 954-55 (9th Cir. 2015). An explanation, however, is necessary when the court

25   departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256-57

26   (9th Cir. 2000). Either way, "[s]election of the benchmark or any other rate must be supported

27   by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft*

28   *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

1    With the lodestar method, the court multiples the number of hours the prevailing party

2    reasonably spent litigating the case by a reasonable hourly rate for counsel. *Bluetooth*, 654

3    F.3d at 941. The product of this computation, the "lodestar" amount, yields a presumptively

4    reasonable fee. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

5    The Ninth Circuit has recommended that district courts apply one method but cross-

6    check the appropriateness of the amount by employing the other as well. *See Bluetooth*, 654

7    F.3d at 944. This diligence is particularly important "when counting all hours expended" in a

8    case "where the plaintiff has achieved only limited success" would yield an "excessive

9    amount" of fees, or when awarding a percentage of a "megafund would yield windfall profits

10   for class counsel in light of the hours spent on the case." *Id*. at 942 ("Just as the lodestar

11   method can confirm that a percentage of recovery amount does not award counsel an

12   exorbitant hourly rate, the percentage-of-recovery method can likewise be used to assure that

13   counsel's fee does not dwarf class recovery.") (internal quotation marks and citations omitted).

14   Similarly, an upward adjustment could be justified if the recovery is "too small . . . in

15   light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v.*

16   *Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990).

17   Here, under the terms of the Settlement Agreement, Plaintiff's counsel will make an

18   application to the Court for an award of attorneys' fees of not more than $58,333 (33 1/3% of

19   the gross settlement amount). (ECF No. 27-2 at 40.) This fee amount is above the benchmark

20   for this circuit. *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at

21   952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same).

22   Generally, the Court would follow the Ninth Circuit's recommendation that the lodestar

23   method be used to cross-check the appropriateness of the percentage of fund award. However,

24   Plaintiff has not provided supporting documentation demonstrating the number of hours

25   counsel have expended on the case to date, nor proposed a reasonable hourly rate, making it

26   impossible for the Court to perform a cross check using the lodestar amount. *See City of*

27   *Maywood*, 729 F.3d at 1202 (lodestars are presumptively reasonable).

28   Despite this deficiency, the Court finds that conditional approval of the attorney's fees

1    award anticipated by the proposed Settlement is appropriate. However, the Court cautions

2    Plaintiff that when the application for attorneys' fees is submitted, Plaintiff's counsel will be

3    required to explain the "special circumstances justifying a departure" from the benchmark. *See*

4    *Bluetooth*, 654 F.3d at 942. The Court will cross check the requested amount with the lodestar

5    amount and will determine whether the award of an above-benchmark percentage in fees is

6    reasonable here. *See Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (noting that an

7    explanation is necessary when the district court departs from the twenty-five percent

8    benchmark). Plaintiff will accordingly be required to submit appropriate documentation

9    accounting for the number of hours expended by Plaintiff's counsel and a proposed reasonable

10   hourly rate to allow the Court to calculate the lodestar amount.

11       2.   Attorneys' Costs

12       Under the settlement, Plaintiff may seek an award of costs not to exceed $15,000. (ECF No.

13   27-2 at 40.) The Court finds that preliminary approval should be granted for this term of the

14   settlement agreement. In connection with final approval, Plaintiff must submit a clearly organized

15   expense log that specifically delineates the costs for which recovery is sought. *See, e.g., City of*

16   *Maywood*, 729 F.3d at 1204 n.4 (holding that a district court can require a fee applicant to submit

17   its supporting documentation in a specified format).

18       3.   Class Representative Incentive Award

19       A district court may award incentive payments to named plaintiffs in class action cases.

20   *Rodriguez*, 563 F.3d at 958–59. The purpose of incentive awards is to "compensate class

21   representatives for work done on behalf of the class, to make up for financial or reputational

22   risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as

23   a private attorney general." *Id.* To justify an incentive award, a class representative must

24   present "evidence demonstrating the quality of plaintiff's representative service," such as

25   "substantial efforts taken as class representative to justify the discrepancy between [his] award

26   and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal.

27   2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a

28   plaintiff undertakes a significant reputational risk in bringing suit against her former employer.

1    *Rodriguez*, 563 F.3d at 958-59.

2        The Ninth Circuit has emphasized, however, that "district courts must be vigilant in

3    scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165

4    (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that

5    admonition, district courts have declined to approve incentive awards that represent an

6    unreasonably high proportion of the overall settlement amount or are disproportionate relative

7    to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365-66 (finding an

8    incentive award of $20,000, comprising 1% of the common fund, to be excessive under the

9    circumstances, and reducing the award to $15,000, where class representative spent 271 hours

10   on the litigation and relinquished the opportunity to bring several of his own claims in order to

11   act as class representative)*; see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA,

12   2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of

13   $20,000, comprising one percent of the approximately $2 million common fund was

14   "excessive under the circumstances" and reducing the award to $5,000; *Wolph v. Acer Am.*

15   *Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing

16   the incentive award to $2,000 where the class representatives did not demonstrate great risk to

17   finances or reputation in bringing the class action). In reducing the award, courts have noted

18   that overcompensation of class representatives could encourage collusion at the settlement

19   stage of class actions by causing a divergence between the interests of the named plaintiff and

20   the absent class members, destroying the adequacy of class representation. *See Staton*, 327

21   F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165.

22       Here, the Settlement Agreement provides for a maximum class representative incentive

23   award of $10,000. (ECF No. 727-2 at 39.) Plaintiff represents that this amount is reasonable

24   given Plaintiff's efforts in this action and the risks he undertook on behalf of the absent Class

25   Members. (ECF No. 27-1 at 40.) Plaintiff states that he devoted many hours advancing the

26   interests of the Class, such as by retaining experienced counsel, providing counsel with

27   information about his work history with Defendant and Defendant's policies and practices that

28   relate to the wage and hour claims at issue, assisting in contacting Class Members to gather

information, traveling to and participating in mediation, and being actively involved in the settlement process. (*Id.* at 41.) Plaintiff also now has a public record that he sued his former employer over unpaid wages and other claims, which may give rise to a stigma that jeopardizes his future employment opportunities. (*Id.*)

As discussed during the April 24, 2020, hearing, the Court is concerned with the amount of the proposed incentive award and the disparity between the award for Plaintiff, as the named class representative, and the estimated average award to be received by all Class Claimants.

The Court cautions that the proposed incentive award appears to be excessive under the circumstances of the case. The $10,000 proposed award constitutes 5.7% of the gross settlement amount and is almost 5 times higher than the estimated $2,091 average award to be received by all Class Claimants (including Plaintiff).

With this caution, the Court will approve the incentive award on a preliminary basis only. At the final approval hearing, the Court will review Plaintiff's evidence that the requested incentive award is warranted here, including evidence of the specific amount of time Plaintiff spent on the litigation, the particular risks and burdens carried by Plaintiff as a result of the litigation, and the particular benefit that Plaintiff provided to counsel and the Class as a whole throughout the litigation. *See Goodwin*, 2017 WL 3173006, at *12 (citing *Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013)).

**F.   Appointment of Settlement Administrator**

The parties have agreed upon and propose that the Court appoint Simpluris to serve as the Settlement Administrator. Plaintiff represents that prior to agreeing to Simpluris, the parties sought and reviewed bids from other reputable third-party administrators that had higher bids. (ECF No. 27-1 at 42; ECF No. 27-2 at 24, 157-60, 163-67, 169-71.) Simpluris has submitted a bid of $3,499. (ECF No. 27-2 at 157-58.) The Court finds it appropriate to approve the appointment of Simpluris as Class Administrator, and to grant preliminary approval of administrative expenses not to exceed $5,000.

**G.   Notice Procedures**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

1.   Proposed Notice

As noted during the April 24, 2020, hearing, the Court has several concerns with the proposed Notice. Those concerns are discussed below.

a.   The Options Provisions

There are errors or, at minimum, unclear and confusing language, in the proposed Notice regarding the three options available to Class Members.

On the second page of the proposed notice, in a table titled, "Your Legal Rights and Options in this Settlement," reproduced below, the proposed notice states:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| Exclude Yourself | Get no payment. |
| Object | Write to the Court about why you don't like the settlement. |
| Do Nothing | The only way to get a payment. Give up rights to continue to pursue the claim. |

(ECF No. 27-2 at 61.)

The explanations in this table are wrong and misleading. The explanations state that the only way to participate in the Settlement and receive an award under the Settlement Agreement is to do nothing. This is wrong and misleading because a class member can file an objection and still participate in the Settlement.

In another section of the proposed notice, titled "What are your options?" located at the bottom of the fourth page and carrying over to the fifth page, the notice sets forth the same three options, although here the "do nothing" option is listed first and the "exclude yourself" option is listed last. (ECF No. 27-2 at 63-64.) The title for the "Object" option in this section is misleading when compared with the title for the "Do Nothing" option. The titles read:

OPTION 1 – DO NOTHING AND PARTICIPATE IN THE SETTLEMENT

. . . .

OPTION 2 – OBJECT TO THE SETTLEMENT

. . . .

(ECF No. 27-2 at 63-64.) Including the phrase "Participate in the Settlement" only in the title of the "Do Nothing" option and not in the title of the "Object" option makes it appear that if a class member files an objection, that class member will not be able to participate in the settlement. The Court recognizes that the explanation provided below the "Object" heading clarifies that objecting to the settlement does not preclude participating in the settlement. However, it is possible that at least some Class Claimants would read the headings for the various options and assume that the only option that allows them to participate in the settlement is the "Do Nothing" option, and that they would not proceed to read the explanation under the "Object" option heading because they believe, based on the headings, that if they object they cannot participate.

The Court recommends that the parties be required to revise the options provisions of the proposed Notice to address the above concerns and ensure that all portions of those provisions accurately and clearly state that a Class Member may participate in the settlement if they either do nothing or they object.

### b.  Method of Objections Provision

The proposed Notice states:

If you wish to remain a Settlement Class Member, but you object to the proposed settlement (or any of its terms) and wish the Court to consider your objection at the Final Settlement Hearing, you may object to the proposed settlement in writing. You may also appear at the Final Settlement Hearing, either in person or through an attorney at your own expense.

If you wish to object to the Settlement, you must file a written objection with the Court and serve copies of the written objection to Class Counsel and Defense Counsel for receipt no later than 45 days from the date that Class Notice is mailed. The objection must include the case name and number and must set forth, in clear and concise terms, a statement of the reasons why the objector believes that the Court should find that the proposed Settlement is not in the best interest of the Class and the reasons why the Settlement should not be approved, including the legal and factual arguments supporting the objection. Copies of any objection must be simultaneously served on Class Counsel and Defense Counsel. Unless otherwise ordered by the Court, Class Members shall not be entitled to appear and or object at the Final Approval Hearing unless they have submitted a timely written objection pursuant to this Section. Class Members who have properly and timely submitted objections may appear at the Final Approval Hearing, either in person or through a lawyer retained at their own expense.

Any objection must be filed with the Court, either by mailing it to Clerk of the Court, United States District Court, Eastern District of California, 2500 Tulare Street, Fresno, California 93721, or by filing it in person at any location of the United States District Court of the Eastern District of California' s civil filings. Any objection must also be served on Plaintiffs counsel and Salas Concrete's counsel at the addresses set forth below and on the Settlement Administrator. Objections must be filed and served no later than [45 days after mailing].

. . . .

IF YOU INTEND TO OBJECT TO THE SETTLEMENT, BUT WISH TO RECEIVE A SETTLEMENT PAYMENT, YOU NEED ONLY FOLLOW THE OBJECTION PROCEDURE DESCRIBED ABOVE. IF THE COURT APPROVES THE SETTLEMENT DESPITE ANY OBJECTIONS, AND YOU HAVE NOT SUBMITTED AN OPT-OUT REQUEST, YOU WILL RECEIVE A SETTLEMENT PAYMENT.

(ECF No. 27-2 at 64.)

As the Court explained during the April 24, 2020, hearing, it is the Court's policy that anyone can raise objections at the fairness hearing for final approval of the settlement, but that the Court retains discretion to decline to consider an objection that has not been timely submitted in writing. The Court recommends that the parties be required to modify the objection provision of the proposed notice to reflect the Court's policy on this issue.

     *c.   Final Settlement Hearing*

The final settlement hearing section of the proposed Notice, located on the fourth page, provides:

The Court will conduct a final fairness hearing regarding the proposed settlement (the "Final Settlement Hearing") on , 2020, at , in Courtroom 5, 7th floor, United States District Court, Eastern District of California, 2500 Tulare Street, Fresno, California 93721. The Court will determine: (i) whether the lawsuit should be finally certified as a class or collective action for settlement

28

purposes; (ii) whether the settlement should be given the Court's final approval as fair, reasonable, adequate and in the best interests of the Class Members (iii) whether the Class Members should be bound by the terms of the settlement; (iv) the amount of the attorneys' fees and expenses to award to Plaintiffs counsel; and (v) the amount that should be awarded to Plaintiff as a service payment. At the Final Settlement Hearing, the Court will hear all properly filed objections, as well as arguments for and against the proposed settlement. You have a right to attend this hearing, but you are not required to do so. You also have the right to hire an attorney to represent you, or to enter an appearance and represent yourself.

(ECF No. 27-2 at 63.)

The final fairness hearing will be set before the undersigned magistrate judge, rather than the district judge, and will therefore be held in Courtroom 10 (EPG) on the 6th Floor of the United States District Court in Fresno, California. Further, as discussed above, anyone may raise objections at the fairness hearing for final approval of the Settlement, but the Court retains discretion to decline to consider objections that have not been timely submitted in writing. The Court recommends that the parties be required to modify the final settlement hearing section of the proposed Notice to state the correct courtroom and to reflect the Court's policy on the ability to raise objections during the final settlement hearing.

> ### d. Conclusion

The Court recommends that, within 14 days of the issuance of the order granting preliminary approval, the parties file a revised proposed notice that is consistent with this Order, including (1) that all portions of the options provisions accurately and clearly state that a class member may participate in the settlement if they either do nothing or they object; (2) that the objections provision accurately reflects the Court's policy that anyone can raise objections at the fairness hearing for final approval of the settlement, but that the Court retains discretion to decline to consider an objection that has not been timely submitted in writing; and (3) that the final settlement hearing section set forth the correct courtroom and reflect the Court's policy on the ability to raise objections during the final fairness hearing.

The Court recommends that the remainder of the Notice packet (ECF No. 27-2 at 60-73), as modified in compliance with the above recommendations, be approved.

### 2. Notice Procedure

Under the Settlement Agreement, within fourteen (14) days after entry of the order

1   granting preliminary approval, Defendant is to provide to the Settlement Administrator and

2   Class Counsel an updated "Database" (defined as a list of Class Members containing names,

3   social security numbers, dates of employment, number of pay periods worked, last-known

4   addresses and phone numbers (based upon documents in the possession of Defendant)). (ECF

5   No. 27-2 at 43.) The Database is to be marked as "Confidential – Attorneys' and Settlement

6   Administrator's Eyes Only." (*Id.*) This Database is to be kept confidential and in a secure

7   location and used exclusively for the purpose of administration of the Settlement. (*Id.*)

8        Within fourteen (14) days after receipt of the Database, the Settlement Administrator is

9   to determine the pay periods worked by each Class Member and send each Class Member a

10  Notice packet consisting of the Class Notice, opt-out request form, and an easily understood

11  statement alerting Class Members that, unless they elect to opt out of the Settlement, the Class

12  Member is releasing and waiving all release claims against Defendant. This package is to be

13  sent to each Class Member via first class U.S. mail and is to include a postage paid return

14  envelope.

15       A Class Member need not act to participate in the Settlement. To opt out of the

16  Settlement, the opt-out request form must be received by the Settlement Administrator within

17  forty-five (45) days of the date the form was mailed by the Settlement Administrator to the

18  Class Member. (ECF No. 27-2 at 43.) For any mail returned to the Settlement Administrator as

19  undelivered, the Administrator will perform a skip trace search to seek an address for the

20  relevant Class Member and will send a second Notice packet to any new or different address

21  obtained. Such Class Members will have an additional fourteen (14) days in which to return

22  the opt-out request form. If an envelope containing a Notice packet has not been returned

23  within twenty-eight (28) days of mailing, it is presumed that it was received by the Class

24  Member.

25       At least fourteen (14) days prior to the Final Approval and Fairness Hearing, the

26  Settlement Administrator is to provide Class Counsel and Defense Counsel with a Declaration

27  of Due Diligence and Proof of Mailing regarding the mailing of the Notice packet and the

28  attempts to locate Class Members. Such declaration is to state the number of Class Members to

whom Notice packets were sent and the number of Class Members to whom Notice packets were not delivered. Class Counsel is to file this declaration with the Court. (ECF No. 27-2 at 44.) Any Class Member who does not opt out of the Settlement is bound by the release of claims set forth in the Settlement Agreement, with the exception of the FLSA release.

The Court finds that the proposed Notice packet, including the Class Notice, and opt-out request form, with the exceptions and recommended modifications discussed above, and the notice procedures, sufficiently provide notice in a reasonable manner to all Class Members who would be bound by the Settlement Agreement and that the proposed mail delivery is also appropriate under the circumstances. The Court also finds the manner of distribution to be sufficient.

## IV.  CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY RECOMMENDED:

1.   The proposed class be conditionally certified under Rule 23(c)(1), for purposes of settlement only, as the proposed class satisfies the requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b), including that:

    a.   The class is so numerous that joinder of all members is impracticable;

    b.   There are questions of law and fact common to the class;

    c.   The claims or defenses of the representative party are typical of the claims or defenses of the class; and

    d.   The representative party will fairly and adequately protect the interests of the class.

2.  The following persons be preliminarily certified as Class Members solely for the purpose of entering a settlement in this matter: All current and former California hourly, non-exempt employees of Salas Concrete, Inc. employed from January 14, 2015 through November 6, 2019.

3.  The Settlement Agreement be granted preliminary approval as it falls within the range of possible approval as fair, adequate, and reasonable, and appears to be the product of arm's length and informed negotiations and to treat all Class Members fairly.

1   4. A final approval hearing on the question of whether the Settlement, attorneys' fees

2 and costs to class counsel, and the class representative incentive award should be finally

3 approved as fair, reasonable, and adequate be held as set forth below.

4   5. The form and content of the Notice of Proposed Class Action Settlement (ECF No.

5 27-2 at 60-73), be approved conditioned on the parties making the following modifications to

6 the Notice:

7     a. Revise the options provisions so that all portions accurately and clearly state

8       that a Class Member may participate in the settlement if they either do

9       nothing or they object;

10     b. Revise the objections provision to accurately reflect the Court's policy that

11       anyone can raise objections at the fairness hearing for final approval of the

12       settlement, but that the Court retains discretion to decline to consider an

13       objection that has not been timely submitted in writing; and

14     c. Revise the final settlement hearing section to set forth the correct courtroom

15       for the hearing and to reflect the Court's policy on the ability to raise

16       objections during the final settlement hearing.

17   6. The parties be directed to file a revised proposed Notice incorporating the above

18 modifications within fourteen (14) days of the district court's order granting preliminary

19 approval of the proposed Settlement.

20   7. The procedures for Class Members to be notified of, participate in, opt-out of, and

21 object to the Settlement, as set forth in the Settlement Agreement (ECF No. 27-2 at 43-44),

22 with the above modifications to the Notice, be approved.

23   8. The Court direct the mailing of the Notice packet by first class mail to the Class

24 Members in accordance with the procedures set forth in the Settlement Agreement (ECF No.

25 27-2 at 44), with the above modifications to the Class Notice.

26   9. The Court approve the procedures for distributing the Notice packet to Class

27 Members, with the above modifications to the Class Notice, as meeting the requirements of

28 due process, providing the best notice practicable under the circumstances, and constituting

due and sufficient notice to Class Members of the terms of the Settlement, their rights under the Settlement Agreement, their rights to object to or comment on the Settlement, their right to receive a share of the Settlement or elect not to participate in the Settlement and the processes for doing so, and the date and location of the final fairness hearing.

10. That Class Members will receive a share of the Settlement and be bound by the Settlement Agreement unless they submit a valid and timely Exclusion Form (opt-out form).

11. That any Class Member who elects not to participate in the Settlement has until forty-five (45) days after the mailing of the Notice packet to submit her or his Exclusion Form (opt-out form) under the procedures set forth in the Class Notice.

12. Simpluris be appointed to act as the Settlement Administrator, under the terms set forth in the Settlement Agreement.

13. John Cavazos be appointed as the Class Representative.

14. The Spivak Law Firm and United Employees Law Group be appointed as Class Counsel.

15. That the Notice packet, including Class Notice, with the above modifications, be distributed to Class Members in accordance with the procedures set forth in the Settlement Agreement. Proof of distribution of the Notice packet is to be filed by the parties in conjunction with the motion for an order granting final approval of the Settlement.

16. That a final approval hearing be held on **January 22, 2021, at 10:00 a.m**., in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean, to determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the Class Members. The Court will hear all evidence and argument necessary to evaluate the Settlement, including any request for an incentive award, and for attorneys' fees and expenses. Class Members and their counsel may support or oppose the Settlement and any request for an incentive award and attorneys' fees and expenses, if they so desire and as set forth in the Class Notice.

17. That the motion for final approval of class action settlement be filed at least twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230.

1    18. That the Court reserves the right to continue the date of the final approval hearing

2    without further notice to Class Members. The Court retains jurisdiction to consider all further

3    applications arising out of or in connection with the Settlement.

4    These Findings and Recommendations will be submitted to the United States District

5    Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within

6    fourteen (14) days after being served with these Findings and Recommendations, the parties

7    may file written objections with the Court. The document should be captioned "Objections to

8    Magistrate Judge's Findings and Recommendations." The parties are advised that failure to

9    file objections within the specified time may result in the waiver of the "right to challenge the

10   magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir.

11   2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

12

13   IT IS SO ORDERED.

14   Dated:   **July 21, 2020**                      /s/ Erica P. Grosjean

15                                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28