1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN CAVAZOS, on behalf of himself         No.  1:19-cv-00062-DAD-EPG
     and all others similarly situated,
12
                      Plaintiff,
13                                              ORDER GRANTING MOTIONS FOR FINAL
           v.                                   APPROVAL OF CLASS AND COLLECTIVE
14                                              ACTION SETTLEMENT AND GRANTING
     SALAS CONCRETE, INC.,                      MOTION FOR ATTORNEY FEES, COSTS,
15                                              AND INCENTIVE AWARD
                      Defendant.
16                                              (Doc. Nos. 56, 57)

17

18

19          This matter came before the court on May 23, 2022 for a hearing on plaintiff John

20   Cavazos's unopposed motions for final approval of a class action settlement and for an award of

21   attorneys' fees, costs, and an incentive award for plaintiff.  (Doc. Nos. 56, 57.)  Attorneys David

22   Spivak of the Spivak Law Firm appeared by video on behalf of plaintiff and the putative class.

23   Attorney Gerardo Hernandez, Jr. of Littler Mendelson, P.C. appeared by video on behalf of

24   defendant Salas Concrete, Inc.  For the reasons set forth below, the court will grant final approval

25   of the class action settlement and will grant the motion for the attorneys' fees, costs, and an

26   incentive award to plaintiff Cavazos.

27   /////

28   /////

                                            1

## BACKGROUND

The court previously summarized plaintiff's allegations in its February 18, 2022 order granting plaintiff's motion for preliminary approval of a class and collective settlement and conditional class certification.  (Doc. No. 52.)  The court will not repeat that factual background in this order.  Following the grant of preliminary approval in this action, on April 25, 2022, plaintiff filed both the pending unopposed motions for final approval of the parties' class action settlement and for attorneys' fees, costs, and an incentive award for plaintiff.  (Doc. Nos. 56, 57.)  In support of his pending motions, plaintiff has submitted declarations from plaintiff, class counsel, and the settlement administrator in this action.  (Doc. Nos. 56-2, 56-3, 56-4, 57-2.)  As of the date of the hearing on May 23, 2022, no objections to the settlement had been received nor filed with the court, and no class members have opted out of the settlement.  (*See* Doc. Nos. 57-1 at 10–11; 58 at 3.)

As summarized by the court in its order granting preliminary approval of the parties' settlement, the settlement agreement provides for a payment plan whereby defendant will deposit a total of $175,000.00 (the "gross settlement fund") over the course of 39 months.[1]  (Doc. No. 52 at 5.)  Assuming the parties' proposed allocations are awarded in full, approximately $83,666.00 (the "net settlement fund") will be available for distribution to participating class and FLSA members.  (*Id.* at 5–6.)

---

[1]  As noted in the court's order granting preliminary approval of the proposed settlement, if defendant defaults under the above payment plan, the settlement agreement provides plaintiff with the option to distribute the already-deposited amounts in the settlement fund *pro rata*.  (Doc. Nos. 45-2 at 50; 52 at 7 & n.9.)  However, it is unclear from the face of plaintiff's preliminary and final approval motions what will happen if defendant defaults and plaintiff does not exercise his option to distribute the funds.  (*See* Doc. No. 52 at 7 n.9.)  At the final approval hearing, class counsel clarified that if plaintiff does not exercise the option to distribute the already-deposited funds in the event of defendant's default, the already-deposited funds would remain unpaid until plaintiff and/or class counsel are able to secure payment from defendant.  In support of class counsel's contentions that this arrangement is fair, adequate, and reasonable, class counsel affirmed that they will not be receiving any fees or costs until the funds are distributed and that they will vigorously pursue payment from defendant in the event of defendant's default.  Class counsel also asserted that this longer-term payment plan was in the best interests of the class because it ultimately allowed class members to receive larger payments than they would have received if defendant were to pay a lump-sum up front, given defendant's precarious financial position, which has been well-documented in this case.  (*See, e.g.*, Doc. No. 52 at 28.)

**FINAL CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE**

The court conducted an examination of the class action factors in the order granting preliminary approval of the settlement and found certification to be warranted.  (*Id.* at 22.) Because no additional substantive issues concerning the certification have been raised, the court does not repeat its prior analysis here and finds that final class and collective action certification in this case is appropriate.

**A.     The Rule 23 Class**

The following class of an estimated 38[2] individuals is therefore certified for settlement purposes:  "all current and former California hourly, non-exempt employees Salas Concrete, Inc. employed during the Class Period."  (Doc. Nos. 45-2 at 37; 52 at 3.)  In addition, for the reasons stated in the order granting preliminary approval, plaintiff John Cavazos is confirmed as class representative, attorneys David Spivak of the Spivak Law Firm and Walter Haines of United Employees Law Group are confirmed as class counsel, and Simpluris, Inc. ("Simpluris") is confirmed as the settlement administrator.

**B.     The FLSA Collective**

The following FLSA collective (the "FLSA Collective"), which shares the same definition as that of the class members, is also certified for settlement purposes:  "all current and former California hourly, non-exempt employees Salas Concrete, Inc. employed during the Class Period."  (Doc. Nos. 45-2 at 37; 52 at 3.)

**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e).  To approve a settlement, a district court must:  (i) ensure notice is sent to all class members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) confirm that the parties seeking approval file a statement identifying the settlement

---

[2]  In his motion for preliminary approval, plaintiff represented that the proposed class contains 39–40 members.  (Doc. No. 45-2 at 37.)  However, plaintiff specifies in his final approval motion that the proposed class contains 38 members.  (Doc. No. 57-1 at 4.)  At the final approval hearing, class counsel explained that defendant provided class counsel with additional information following this court's preliminary approval order, which allowed class counsel to confirm the class size of 38 members.

agreement; and (iv) be shown that class members were given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The amended settlement agreement in this action was previously filed on the court's docket (*see* Doc. No. 45-2 at 35–66), and class members have been given an opportunity to object.  The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**A.     Notice**

Adequate notice of the class settlement must be provided under Rule 23(e).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 4:13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice.").  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025.

The court previously reviewed the notice provided in this case at the preliminary approval stage and found it to be satisfactory.  (Doc. No. 52 at 37.)  Following the grant of preliminary approval, the settlement administrator Simpluris conducted a National Change of Address search to update the list of proposed class members with current addresses and then mailed the court-approved notice to the 38 proposed class and FLSA collective members.  (Doc. No. 57-1 at 4.)  Of the 38 initial mailings, nine were returned as undeliverable.  (Doc. No. 56-4 at 211.)  The administrator used a research tool owned by Lexis Nexis called Accurint to identify forwarding addresses belonging to those class members and remailed notice packages accordingly.  (Doc. Nos. 56-4 at 211; 57-1 at 4–5.)  As of May 23, 2020, just one packet was identified as

1  undeliverable.  Thus, of the 38 total class members, 37, or 97%, are estimated to have received

2  actual notice of the settlement.

3      Given the above, the court accepts the reports of the settlement administrator and finds

4  adequate notice has been provided, thereby satisfying Federal Rule of Civil Procedure 23(e)(1).

5  *Silber*, 18 F.3d at 1453–54; *Winans*, 2016 WL 107574, at *3.

6  **B.      Final Fairness Determination**

7      On May 23, 2022, the court held a final fairness hearing, at which class counsel and

8  defense counsel appeared by video.  The court now must determine whether the settlement is fair,

9  adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).

10     At the final approval stage, the primary inquiry is whether the proposed settlement "is

11 fundamentally fair, adequate, and reasonable."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th

12 Cir. 2012); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the

13 individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at

14 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir.

15 1982)); *see also Lane*, 696 F.3d at 818–19.  Having already completed a preliminary examination

16 of the agreement, the court reviews it again, mindful that the law favors the compromise and

17 settlement of class action suits.  *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

18 Cir. 2008); *Churchill Vill., L.L.C.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d

19 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.  Ultimately, "the decision to

20 approve or reject a settlement is committed to the sound discretion of the trial judge because he

21 [or she] is exposed to the litigants and their strategies, positions, and proof."  *Staton*, 327 F.3d at

22 953 (quoting *Hanlon*, 150 F.3d at 1026).

23     In assessing the fairness of a class action settlement, courts balance the following factors:

24         (1) the strength of the plaintiffs' case; (2) the risk, expense,
           complexity, and likely duration of further litigation; (3) the risk of
25         maintaining class action status throughout the trial; (4) the amount
           offered in settlement; (5) the extent of discovery completed and the
26         stage of the proceedings; (6) the experience and views of counsel;
           (7) the presence of a governmental participant; and (8) the reaction
27         of the class members to the proposed settlement.

28 *Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779

1  F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir.

2  2009).  These settlement factors are non-exclusive, and each need not be discussed if they are

3  irrelevant to a particular case.  *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.[3]

4  However, the Ninth Circuit has found that consideration of the *Churchill* factors alone is

5  not sufficient to survive appellate review.  *See Briseño v. Henderson*, 998 F.3d 1014, 1022–26

6  (9th Cir. 2021) (holding that the revised Rule 23(e) requires district courts "to go beyond our

7  precedent" and mandates consideration of "the *Bluetooth* factors" to all class action settlements,

8  regardless of whether settlement was achieved before or after class certification; *see also* Fed. R.

9  Civ. P. 23(e)(2)(C)–(D).  Under the revised Rule 23(e), "district courts must apply

10  the *Bluetooth* factors to scrutinize fee arrangements . . . to determine if collusion may have led to

11  class members being shortchanged."  *Briseño*, 998 F.3d at 1026.  The so-called *Bluetooth*

---

[3]  As part of the 2018 amendments to the Federal Rules of Civil Procedure, subsection (e)(2) was added to Rule 23, providing guidance to district courts in determining whether a class action settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In so determining, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. Pro. 23(e)(2).  The purpose of the 2018 amendment "was not to displace any factor" previously generated by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the propos[ed settlement]."  Fed. R. Civ. P. 23, Advisory Comm. Notes; *see Kang v. Wells Fargo Bank, N.A.*, No. 5:17-cv-06220-BLF, 2021 WL 5826230, at *14 (N.D. Cal. Dec. 8, 2021) ("Consideration of *Churchill* factors is not precluded by the 2018 amendment to Rule 23."); *Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD, 2021 WL 5761083, at *2 (E.D. Cal. Dec. 3, 2021) ("Before these provisions were incorporated into Rule 23(e), the Ninth Circuit and other courts used similar factors to decide whether settlement agreements in class actions were 'fair, reasonable, and adequate.'").

factors—also referred to as "subtle signs" of collusion—include:  (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorneys' fees sought; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).  "The presence of these three signs is not a death knell—but when they exist, 'they require[ ] the district court to examine them, . . . develop the record to support its final approval decision,' and thereby 'assure itself that the fees awarded in the agreement were not unreasonably high.'" *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).  Thus, while this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard, and in order "[t]o survive appellate review . . . [it] must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021) (quoting *Allen*, 787 F.3d at 1223–24).

### 1.   Strength of Plaintiffs' Case

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  The court cannot reach such a conclusion because evidence has not been fully presented. *Id*.  Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

Plaintiff asserts that in continuing to litigate this action, he would have faced many challenges, despite plaintiff's confidence in his case. (*See, e.g.* Doc. No. 45-1 at 34–38.)  Plaintiff contends that during the class period, defendant engaged in a "uniform policy of failing to

properly account for all time worked and failing to provide off-duty meal and rest periods, failing to pay minimum and overtime wages, failing to provide accurate written wage statements, failing to reimburse for expenses, and failing to timely pay all final wages." (*Id.* at 24.)  However, as described in the settlement agreement, defendant "continues to deny each and all of the claims and contentions alleged" by plaintiff, and defendant denies that plaintiff or the class members would be entitled to civil penalties as a result of the claims in this action.  (Doc. No. 45-2 at 45.)  Defendant has represented that its witnesses will assert that no such policy existed, which would lead to "conflicting evidence" at trial.  (Doc. No. 45-1 at 35.)  In addition, as described in the court's order granting preliminary approval of the proposed settlement, plaintiff concedes that many of its claims are difficult to prove.  (*Id.* at 34; Doc. No. 52 at 27.)  For example, plaintiff states that "[i]n meal period claims, there always exists the difficulty of proving why a class member took a short, late, or no meal period," and as to rest periods, "there is no . . . evidence to prove a missed rest period or that the employer refused to authorize and permit one." (Doc. No. 45-1 at 35–36.)  According to plaintiff, defendant's opposition and the difficulty of proving certain claims would present challenges to plaintiff's ability to prevail on the merits.  (*See id.*)

Accordingly, the court finds that consideration of this factor weighs somewhat in favor of granting final approval of the parties' settlement in this action.

### 2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

When considering whether the relief for the class is "adequate," the court must take into account "the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C)(i).  "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955 F.2d at 1276).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results."  *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Because of the aforementioned challenges, plaintiff believes this class and collective action would involve "expensive and protracted litigation, both at the trial and appellate levels,

absent the Settlement." (Doc. No. 57-1 at 10.)  Moreover, plaintiff has not indicated that there has been any change to defendant's financial condition, which at the preliminary approval stage, plaintiff described as the "primary reason Plaintiff's counsel recommended Plaintiff accept the Settlement on behalf of the Class." (Doc. No. 45-1 at 31; *see also* Doc. No. 52 at 28.)  During settlement negotiations and informal discovery, defendant provided class counsel with various financial documents and "convincingly promised to seek bankruptcy protection and shut down the business if litigation continued." (Doc. No. 45-1 at 31.)  According to plaintiff, due to defendant's precarious financial condition, "even if Plaintiff prevailed on all claims at trial, he may never recover the unpaid wages and risk of Defendant's insolvency. . . . If the company ceases to exist, the putative class members will have no hope of recovery." (*Id.* at 31–32.)

The court finds that consideration of this factor weighs heavily in favor of granting final approval.

### 3.   Risk of Maintaining Class Action Status Throughout Trial

Plaintiff did not address this factor in his pending motion.  Nonetheless, there does not appear to be any risk that plaintiff would be unable to maintain class action status throughout trial.

### 4.   Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *see also* Fed. R. Civ. P 23(e)(2)(C)–(D).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  In addition, the court must consider whether "the proposal treats class members equitably relative to each other" and whether "the relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2)(C)–(D).

9

Here, the parties have agreed to a $175,000.00 gross settlement, allocated as follows:  (1) up to $58,333.00 for attorneys' fees and up to $15,000 for class counsel's documented litigation costs; (2) a $10,000 incentive award for plaintiff; (3) $4,000 in civil Private Attorneys General Act, California Labor Code § 2698, *et seq.* ("PAGA") penalties, with $3,000 of the penalties payable to the California Labor and Workforce Development Agency ("LWDA");[4] (4) up to $5,000 for settlement administration costs; and (5) the remainder of the funds being allocated to the class and collective net settlement fund.  (Doc. No. 45-2 at 46–47, 49, 54–55.)  Defendant is responsible for paying any applicable payroll taxes "separate and apart" from the $175,000 deposit to the gross settlement fund.  (*Id.* at 40; *see also* Doc. No. 57-1 at 3.)  Without including the estimated value of the PAGA claims, the gross settlement fund of $175,000 is only an approximately 5.8 percent recovery of plaintiff's maximum potential damages.  (Doc. No. 45-1 at 34.)  *See also Singh v. Roadrunner Intermodal Servs, LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325, at *7 (E.D. Cal. May 29, 2018), *modified*, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) (excluding the estimated value of the plaintiffs' PAGA claims when calculating the percentage of the estimated maximum damages accounted for by the proposed settlement amount).  However, class counsel asserts that the settlement amount has been discounted due to the various risks of ongoing litigation.  (*See* Doc. Nos. 45-1 at 35; 57-1 at 10.)

Ninety percent of the net settlement fund will be allocated to the class action settlement, and the remaining ten percent will be allocated to the FLSA settlement.  (Doc. No. 45-2 at 54–55.)  The net class and net FLSA settlement funds will be distributed to their respective members on a *pro rata* basis that is based on the number of pay periods worked by the applicable participating class and FLSA members while employed by defendant during the class period.  (*Id.*)  Based on plaintiff's current estimate of the net settlement fund, the average individual class members are expected to recover $2,216.16, with the highest gross settlement payment is

/////

---

[4]  Pursuant to the PAGA, 75% of the civil PAGA penalties, or $3,000, will go to the LWDA, and 25%, or $1,000, will be allocated to the net settlement fund.  (Doc. No. 45-2 at 50); *see* Cal. Lab. Code § 2699(i).

1    estimated to be $4,121.65.[5]  (Doc. No. 57-1 at 5.)  The PAGA penalties are $4,000, of which

2    75%, or $3,000, will be distributed to the LWDA, and $1,000 will become part of the net

3    settlement fund.  (*Id.* at 3.)  Plaintiff asserts that the settlement's overall recovery and the *pro rata*

4    allocation method are appropriate and fair.  (*Id.* at 10.)  None of the net settlement fund will revert

5    to defendant because checks that are not cashed before their expiration will be cancelled, and

6    those funds will be transmitted to the California State Controller's Unclaimed Property Fund.

7    (Doc. No. 45-2 at 57.)

8            The proposed settlement amount is, for the most part, below the general range of

9    percentage recoveries that California courts—including this one—have found to be reasonable.

10   *See, e.g.*, *Singh*, 2018 WL 2412325, at *7 (approving a settlement of about 12% of the estimated

11   maximum damages); *Glass v. UBS Fin. Servs., Inc.*, No. 3:06-cv-04068-MMC, 2007 WL 221862,

12   at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement of about 25–35% of the estimated

13   maximum); *Hunt v. VEP Healthcare, Inc.*, No. 16-cv-04790-VC, 2017 WL 3608297, at *1 (N.D.

14   Cal. Aug. 22, 2017) (denying preliminary approval of a class action settlement where the

15   proposed settlement amounted to only 4.3 percent of the estimated damages); *but see Ferrell v.*

16   *Buckingham Property Management*, No. 1:19-cv-00332-NONE-SAB, 2020 WL 4364647, at *2

17   (E.D. Cal. July 30, 2020) (describing a class action settlement that amounted to 5.3 percent of the

18   estimated damages as "somewhat near the range of the percentage recoveries that district courts

19   have found to be reasonable"); *Balderas v. Massage Envy Franchising, LLC*, No. 3:12-cv-06327-

20   NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of class

21   action settlement where the proposed settlement amounted to 5% of the total value of the claims,

22

23   [5]  This calculation by plaintiff assumes that a full $15,000.00 will be taken from the gross
     settlement fund to reimburse class counsel for litigation expenses.  (*See* Doc. No. 45-2 at 49.)  As
24   the court details below, class counsel have only documented litigation expenses in the amount of
     $5,482.94.  (Doc. No. 56-1 at 23.)  The settlement agreement in this case states that "[i]f the
25   Court's award of Class Attorney's Fees or Expenses is less than set forth above, or is otherwise
     less than the amount actually requested by Class Counsel, the Net Settlement Amount shall be
26   recalculated to reflect the actual Class Attorney's Fees and Expenses awarded as necessary."
     (Doc. No. 45-2 at 49.)  Accordingly, given the decrease in the allocation of gross settlement funds
27   toward class counsel's litigation expenses, the average individual recovery for class members in
     this case will in fact be closer to $2,457.13.
28

1   based on the risks and expenses of continued litigation, but requiring the parties to present

2   evidence as to why such a low recovery was warranted in that case).  As noted above, the court

3   has received no objections to the settlement nor have any class or collective members sought to

4   opt out of the settlement.  Finally, even though the court has observed that the percentage

5   recovery is relatively low in this action, the court acknowledges that a larger recovery here would

6   likely not be possible due to defendant's financial condition.  Overall, based on the information

7   presented to the court and the specific circumstances of the parties in this action, the court

8   concludes that the amount offered in settlement of this action does not appear to be unreasonable.

9                    a.      *PAGA Penalties Amount Offered in Settlement*

10          As described above, the settlement also provides for $4,000 in civil PAGA penalties.

11   (Doc. No. 45-2 at 46-47.)  Under PAGA, 75% of the civil penalties, or $3,000.00, will go to the

12   LWDA, and 25%, or $1,000.00, will be included in the net settlement amount.  (*Id.*); *see* Cal.

13   Lab. Code § 2699(i).

14          Although there is no binding authority setting forth the proper standard of review for

15   PAGA settlements, California district courts "have applied a Rule 23-like standard, asking

16   whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in

17   light of PAGA's policies and purposes.'"  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp.

18   3d 959, 972 (N.D. Cal. 2019).  This standard is derived from the LWDA.  In commenting on a

19   proposed settlement including both class action and PAGA claims, the LWDA has offered the

20   following guidance:[6]

21          It is thus important that when a PAGA claim is settled, the relief
            provided for under the PAGA be genuine and meaningful, consistent

22          with the underlying purpose of the statute to benefit the public and,
            in the context of a class action, the court evaluate whether the

23          settlement meets the standards of being "fundamentally fair,
            reasonable, and adequate" with reference to the public policies

24          underlying the PAGA.

25   *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA's

26   _____

27   [6]  The LWDA has also stated that it "is not aware of any existing case law establishing a specific
     benchmark for PAGA settlements, either on their own terms or in relation to the recovery on
     other claims in the action."  *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal.

28   Jul. 29, 2016) (Doc. No. 736 at 2–3).

guidance with approval).  Recognizing the distinct issues presented by class actions, this court is persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA portion of the settlement now before the court.  *See, e.g.*, *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020); *Patel v. Nike Retail Servs., Inc.*, No. 3:14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019).

The proposed $4,000.00 penalty payment in this case represents 2.3% of the estimated $175,000.00 gross settlement amount.  (*See* Doc. No. 45-2 at 46.)  The amount proposed to settle plaintiff's PAGA claims is consistent with other PAGA settlements approved by this court.  *See, e.g.*, *Castro*, 2020 WL 1984240, at *15 (approving PAGA penalties representing 2% of the gross settlement fund); *Syed v. M-I, LLC*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving PAGA penalties representing 1.4% of the gross settlement fund); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving PAGA penalties representing 0.27% of the gross settlement fund).  Moreover, in a declaration attached to plaintiff's motion for preliminary approval, class counsel declared that the proposed settlement was submitted to the LWDA in accordance with PAGA, Cal. Lab. Code § 2699(l)(2), and attached supporting documentation for this submission. (Doc. No. 45-2 at 32–33, 291–294.)  At the final approval hearing, class counsel confirmed that the LWDA did not provide any response to their submission.  Having reviewed the parties' submission and the terms of the proposed settlement, the court finds that the settlement amount related to Plaintiff's PAGA claims is fair, reasonable, and adequate in light of PAGA's public policy goals.

Thus, the court finds that the amount offered in settlement of the PAGA claims here weighs in favor of final approval of the settlement.

5.     Extent of Discovery Completed and Stage of the Proceedings

"In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

1   (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class

2   action settlement thus "is proper as long as discovery allowed the parties to form a clear view of

3   the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.

4   443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and

5   genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D.

6   Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).  The court must consider

7   whether the process by which the parties arrived at their settlement is truly the product of arm's

8   length bargaining, rather than collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310

9   F.R.D. 593, 613 (E.D. Cal. 2015).  These concerns are also reflected in Rule 23(e)(2)'s focus on

10  procedural fairness—whether "the class representatives and class counsel have adequately

11  represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P.

12  23(e)(2)(A)–(B).

13          As detailed in the court's order granting preliminary approval, the court is satisfied that

14  the parties' negotiations constituted genuine and informed arm's length bargaining.  (Doc. No. 52

15  at 24.)  The parties entered into private mediation with a neutral, professional mediator ten

16  months after the litigation in this action began, who successfully helped the parties negotiate a

17  payment plan that would make settlement possible.  (Doc. Nos. 52 at 24–25; 45-1 at 14; 45-5 at

18  ¶ 5–6.)  Prior to and during mediation, the parties engaged in "informal discovery" whereby they

19  exchanged "substantial" amounts of data, information, and documents.  (Doc. Nos. 52 at 24–25;

20  45-1 at 14, 31–32.)

21          Accordingly, the court concludes that consideration of this factor weighs in favor of

22  granting final approval.

23          6.      Experience and Views of Counsel

24          Class counsel have submitted declarations by attorneys Spivak and Haines describing their

25  experience in class and representative action litigation.  (*See* Doc. Nos. 56-2 at 2; 56-4 at 1.)

26  Attorney Spivak submits that he has been practicing law since 1995, when he graduated from

27  Southwestern University School of Law.  (Doc. No. 56-4 at 4.)  Attorney Spivak represents that

28  he has worked "almost exclusively in the area of employment law representing employees with

14

claims of wrongful termination, harassment, whistleblower retaliation, discrimination, wage and hour, and family and medical leave violations." (*Id.*) In addition, he states that he has been involved in "numerous wage and hour class actions at various stages of litigation" and has served as the lead attorney for plaintiffs in several wage and hour class actions. (*Id.* at 6.) Attorney Spivak has provided a sample list of such cases he has worked on during his career. (*See id.* at 6– 9.) Similarly, Attorney Haines submits that he has been practicing law for over 40 years, is "highly experienced in actions of this nature," and is the most senior attorney at his firm. (Doc. No. 56-2 at ¶ 3.) He founded his law firm, United Employees Law Group, in 2005 to "primarily" represent employees in wage and hour claims. (*Id.*) According to Attorney Haines, he has represented "over 1,500 clients in wage and hour disputes of which more than 300 cases were class actions." (*Id.*)

The court finds that the view of class counsel that the proposed settlement is fair and reasonable weighs in favor of granting final approval.

### 7.    Presence of a Governmental Participant

The settlement agreement contemplates payment of $3,000 of the settlement amount to the California Labor and Workforce Development Agency under PAGA. (Doc. No. 45-2 at 46–47.) This too weighs in favor of approval of the settlement. *See Adoma*, 913 F. Supp. 2d at 977 (factoring civil PAGA penalties in favor of settlement approval); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 3:13-cv-02679-CAB-BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (same).

### 8.    Reaction of the Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing cases). The presumption that a settlement is fair, reasonable, and adequate is particularly strong when there is an absence of a single objection to a proposed class action settlement. *See id.*; *Barcia v. Contain-A-Way, Inc.*, No. 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009). Nevertheless, "[a] court may appropriately infer that a class action settlement is

1  fair, adequate, and reasonable when few class members object to it." *Cruz v. Sky Chefs, Inc.*, No.

2  4:12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill*

3  *Village,* 361 F.3d at 577).

4         According to plaintiff, no member of the class has filed an objection to the settlement

5  pending before the court for final approval.  (Doc. No. 57-1 at 10.)  Moreover, no class members

6  raised any objections to the settlement at the final fairness hearing.  Accordingly, consideration of

7  this factor weighs significantly in favor of granting final approval.

8         9.      Subtle Signs of Collusion

9         The court now turns to a review of whether any of the "more subtle signs" of collusion

10 recognized by the Ninth Circuit are present here.  *See Bluetooth*, 654 F.3d at 947.

11        First, the court does not find that class counsel is seeking a disproportionate distribution of

12 the settlement.  With an average estimated class member recovery in this action of $2,216.16 and

13 a requested award of attorneys' fees in the amount of $58,333.00, it does not appear that counsel

14 seeks to receive a disproportionate distribution of the settlement, even though the award of

15 attorneys' fees sought here—one-third of the settlement fund—is on the high end of amounts

16 typically awarded in the Ninth Circuit.  (*See* Doc. Nos. 57-1 at 5; 56 at 3); *see, e.g.*, *Morales* ,

17 2011 WL 5511767, at *12 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is

18 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting

19 *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Castro v. Paragon Indus., Inc.*, No.

20 1:19-cv-00755-DAD-SKO, 2021 WL 20242333, at *5, *12 (E.D. Cal. May 21, 2021) (granting

21 final approval of a class and collective action settlement with an average individual class member

22 recovery of $1,070.62 and an award of $1,031,250.00 in attorneys' fees).

23        Second, the proposed settlement does not provide for a "clear sailing" arrangement.  The

24 attorneys' fees are paid for through the gross settlement fund and will be distributed to class

25 counsel no more than twenty-eight days before the settlement administrator distributes settlement

26 amounts to participating class members.  (*See* Doc. No. 45-2 at 55–56.)  Although defendant

27 agreed to not oppose plaintiff's incentive award under the settlement agreement, there is no

28 /////

1    indication that defendant expressly agreed not to oppose an award of attorneys' fees up to an

2    agreed upon amount.  (*Id.* at 47, 49.)

3          Third, the parties did not arrange for an unawarded amount of fees to revert to defendants.

4    Rather, settlement checks that are not cashed before their expiration will be cancelled with funds

5    to be transmitted to the California State Controller's Unclaimed Property Fund.  (*Id.* at 57.)

6          Thus, the court is satisfied that the more subtle signs of collusion that the Ninth Circuit

7    has warned of are not sufficiently present here to warrant the rejecting of the proposed settlement.

8          In sum, after considering all of the relevant factors, the court finds on balance that the

9    settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  Therefore, the court will

10    grant plaintiff's motion for final approval of the parties' class action settlement.[7]

11               **FINAL APPROVAL OF FLSA COLLECTIVE SETTLEMENT**

12          The first amended complaint in this action also contains a claim brought under the FLSA.

13    (*See* Doc. No. 8 at 1.)  Settlement of claims under the FLSA also requires court approval.  *See*

14    *Jones v. Agilysys, Inc.*, No. 4:12-cv-03516-SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10,

15    2014); *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's*

16    *Rest.*, No. 5:05-cv-0279-PVT, 2007 WL 2298046, at *1, n.1 (N.D. Cal. Aug. 8, 2007).  "The

17

---

18    [7]  In the court's order granting preliminary approval of this settlement, the court expressed its
"serious concern regarding the release of 'concealed or hidden' claims as specified in the

19    Settlement Agreement" and directed the parties to demonstrate to the court at the final approval
hearing that the release of claims in this case is not overbroad.  (Doc. No. 52 at 35 n.20; *see also*

20    Doc. No. 45-2 at 41.)  At the final approval hearing, class counsel and counsel for defendant
asserted that the release of claims is not overbroad in this respect, because even the "concealed or

21    hidden" claims that are released under the settlement agreement in this case must "aris[e] out of
the facts and circumstances alleged in the First Amended Complaint during the Release Period."

22    (Doc. No. 45-2 at 41–42.)  Class counsel also represented that he thoroughly reviewed the facts in
this case and thinks it is highly unlikely that there are any hidden or concealed claims in this case.

23    Counsel for defendant noted that this release language provided "comfort" to defendant that
certain claims that could have been, but were not, brought in this case were released.  The court

24    reiterates its concern regarding proposed settlements that purport to release "concealed or hidden"
claims.  However, under the specific and unique factual circumstances in this case—specifically,

25    where the release of claims is tethered to facts arising out of the allegations in the operative
complaint, class counsel has represented that he thoroughly investigated the facts of the case and

26    is confident that there are no hidden or concealed claims, and defendant's perilous financial

27    condition rendered additional security necessary in order for a settlement to be reached—the court
finds that the settlement in this case is fair, reasonable, and adequate.

28

1    FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot

2    be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).

3         As detailed in the order granting preliminary approval of the settlement, the Ninth Circuit

4    has not yet established consistent criteria for district courts to evaluate whether an FLSA

5    settlement should be approved.  (*See* Doc. No. 52 at 11); *see also Wonderly v. Youngblood*, No.

6    1:16-cv-01621-BAK, 2022 WL 378262, at *3, (E.D. Cal. Feb. 8, 2022) (citing *Dunn v. Teachers*

7    *Ins. & Annuity Ass'n of Am.*, No. 4:13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan.

8    13, 2016)).  In this circuit, district courts look to whether the settlement is a fair and reasonable

9    resolution of a *bona fide* dispute.  *Dunn*, 2016 WL 153266, at *3; *see also Lynn's Food Stores,*

10   *Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l*

11   *Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at

12   *1.  "A *bona fide* dispute exists when there are legitimate questions about the existence and extent

13   of Defendant's FLSA liability."  *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and

14   citation omitted).  A court will not approve a settlement of an action in which there is certainty

15   that the FLSA entitles plaintiff to the compensation they seek, because to do so would shield

16   employers from the full cost of complying with the statute.  *Id.*

17        Once it is established that there is a *bona fide* dispute, courts often apply the Rule 23

18   factors for assessing proposed class action settlements when evaluating the fairness of an FLSA

19   settlement, while recognizing that some of those factors do not apply because of the inherent

20   differences between class actions and FLSA actions.  *See Khanna v. Inter-Con Sec. Sys., Inc.*, No.

21   2:09-cv-2214-KJM-EFB, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).  Having found this

22   settlement to be fair and reasonable under Rule 23, the court therefore looks only to whether there

23   is a *bona fide* dispute regarding the existence and extent of defendant's FLSA liability.

24        Plaintiff has not explicitly advanced arguments regarding whether there is a *bona fide*

25   dispute here, in either of his motions for preliminary or final approval.  Nonetheless, as the court

26   mentioned in its order granting preliminary approval of the settlement, such a dispute is apparent

27   in this case.  (Doc. No. 52 at 24.)  The class notice in this case states that defendant "denies all of

28   the material allegations" in the action, and the settlement agreement itself states that defendant

18

1    "denies and continues to deny each and all of the claims and contentions alleged" by plaintiff.

2    (Doc. Nos. 45-2 at 45; 57-2 at 127.)  Plainly, this denial encompasses plaintiff's FLSA claim for

3    failure to pay minimum and overtime wages.  In addition, at the preliminary approval stage, class

4    counsel submitted its damages calculations prepared in advance of settlement negotiations, which

5    included amounts of civil penalties in connection with unpaid minimum wage violations and

6    unpaid overtime violations, which form the basis of plaintiff's FLSA claim.[8]  (Doc. No. 45-2 at

7    205–214.)  Based upon the information provided, the court now concludes that there was a *bona*

8    *fide* dispute as to defendant's FLSA liability and thus will approve the parties' FLSA settlement.

9    **ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS**

10         As noted above, plaintiff has also submitted a motion seeking awards of attorneys' fees,

11   class counsel's litigation expenses, settlement administrator costs to Simpluris, and an incentive

12   award for plaintiff Cavazos.  (Doc. No. 56.)

13   **A.    Attorney's Fees**

14         This court has an "independent obligation to ensure that the award [of attorneys' fees],

15   like the settlement itself, is reasonable, even if the parties have already agreed to an amount."

16   *Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the

17   relationship between the class members and class counsel "turns adversarial."  *In re Mercury*

18   *Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply*

19   *Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a

20   fiduciary role for the class members in evaluating a request for an award of attorneys' fees from

21   the common fund.  *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645,

22   655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

23   /////

---

[8]  In its order granting preliminary approval, the court directed class counsel to clarify in
plaintiff's motion for final approval whether counsel's valuation of plaintiff's FLSA overtime and
minimum wage claims included the liquidated damages provided for by law.  (Doc. No. 52 at 26
n.15); *see* 29 U.S.C. § 216(b).  Nonetheless, class counsel failed to so specify.  However, at the
final approval hearing, class counsel represented that liquidated damages were included in class
counsel's damages valuation, but once again reiterated that these amounts were heavily
discounted due to defendant's financial position.

1    The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

2    where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

3    the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290

4    F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

5    common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No.

6    2:14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either

7    approach, "[r]easonableness is the goal, and mechanical or formulaic application of method,

8    where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life*

9    *Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  As noted above, the Ninth Circuit

10   has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. *Id.* at

11   1047–48; *see also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as

12   the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

13   'special circumstances' justifying a departure.").

14   Reasons to vary the benchmark award may be found when counsel achieves exceptional

15   results for the class, undertakes "extremely risky" litigation, generates benefits for the class

16   beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*,

17   290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55.  Ultimately,

18   however, "[s]election of the benchmark or any other rate must be supported by findings that take

19   into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit

20   has approved the use of lodestar cross-checks as a way of determining the reasonableness of a

21   particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is

22   minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a

23   lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a

24   higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779

25   F.3d at 955.

26   Here, the parties' settlement provides that class counsel will seek an award of 33.33% of

27   the gross settlement fund, equivalent to $58,333.00.  (Doc. No. 45-2 at 49.)  The court approved

28   plaintiff's request for attorneys' fees on a preliminary basis, finding that the requested fee was

1   reasonable even though it was a somewhat higher percentage of the settlement amount than the

2   25% benchmark rate in the Ninth Circuit, but was not an uncommon percentage to wage-and-hour

3   class actions in the Eastern District of California.  (Doc. No. 52 at 32.)  *See also Barbosa v.*

4   *Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts

5   approved attorneys' fees of approximately one-third of the total settlement).  The court also

6   advised that it would make a final determination regarding the reasonableness of the requested

7   attorneys' fee amount by carefully performing a lodestar cross-check at the final approval stage.

8   (Doc. No. 52 at 33.)  Class counsel contend that a fee award of 33.33% of the gross settlement

9   fund is reasonable here for several reasons.

10          First, class counsel assert that despite the Ninth Circuit's 25% benchmark, the Ninth

11   Circuit has affirmed awards of fees equal to one-third of the overall recovery.  (Doc. No. 56-1 at

12   15 (citing cases).)  Class counsel also contend that the requested attorneys' fees here amount to

13   less than what class counsel would receive if they represented each class member on an individual

14   basis under their standard continency fee arrangements that authorize fees of up to 40% of the

15   ultimate recovery.  (*Id.* at 16–17.)  Moreover, they argue that the contingency fee basis of their

16   representation—including the fact that they took on the risk of not receiving any payment or

17   reimbursement for their work and expenses incurred throughout their litigation of this matter—

18   justifies the requested 33.33% fee because "it is an established practice to reward attorneys who

19   take on the added risk of a contingency case."  (*Id.* at 17–18.)  Finally, class counsel point to their

20   experience in litigating wage and class hour actions as supporting the reasonableness of the

21   requested award, stating that their "previous experience in similar matters was integral" to the

22   parties reaching the settlement, particularly in light of the "caliber and experience of opposing

23   counsel in labor and employment litigation."  (*Id.* at 19–20.)

24          The court is unpersuaded by class counsel's argument that "it would be unfair to

25   compensate Class Counsel at a lesser rate" than they would have received if they had represented

26   each class member individually under their regular 40% contingency fee arrangement.  Notably,

27   plaintiff acknowledged in his motion for preliminary approval that most of the class members

28   "stand to recover damages in relatively small amounts," such that "a class action thus serves as

the *only* method that would 'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'"  (Doc. No. 45-1 at 27 (quoting *Local Joint Exec. Bd. Of Culinary/Bartenders Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)) (emphasis added).  Given the court's preliminary finding that a class action allows for the issues in this case to be "resolved for all members more efficiently and expeditiously in a single action," it follows that class counsel has not expended the same amount of time and effort litigating this action than it would have if it brought 38 separate lawsuits on behalf of the individual class members.  (Doc. No. 52 at 22.)  Similarly, class counsel, with their extensive experience in litigating wage-and-hour class actions, presumably undertook this representation with the knowledge that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."  *Morales*, 2011 WL 5511767, at *12 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)).  Accordingly, the court does not find that class counsel's standard 40% contingency fee rate would necessarily render an award of less than 33.33% "unfair" in this case.

Nonetheless, the court agrees that consideration of several other factors support finding that the requested fee award departing from the benchmark is fair and reasonable.  The average individual class members' recovery of $2,216.16 is a positive outcome for class members in this case, where the estimated average hourly pay of class members during the class period was $19.17.  (*See* Doc. Nos. 57-1 at 5; 52 at 28.)  Class counsel undertook this representation on a contingency fee basis, and the risks in this litigation were heightened by defendant's precarious financial situation, which, according to the parties, could have led to no recovery at all for the class members.  (*See* Doc. No. 45-5 at 2.)  A departure from the benchmark is also supported by the absence of any objection to the settlement or requests for exclusions.  The class notice specifically advised class members that class counsel would seek $58,333.00 from the gross settlement amount for attorneys' fees.  (Doc. No. 45-2 at 49.)  Plaintiff's request for attorneys' fees thus appears to have the support of the class and that support weighs in favor of the requested award.

/////

The court next turns to the lodestar calculation in order to cross-check the reasonableness of the requested attorneys' fee award. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 2:06-cv-04149-MMM-SH, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier can be applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (stating courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting 4 Newberg on Class Actions § 14.7).

Here, class counsel assert that the total lodestar amount without any multiplier is $99,161.33, which consists of $72,553.83 in fees generated by the Spivak Law Firm and $26,607.50 in fees generated by the United Employees Law Group. (Doc. No. 56-4 at 16.) Class counsel's lodestar exceeds the requested one-third of the gross settlement amount by $40,828.33 and results in a multiplier of 0.59. (*Id.*) In support of this lodestar calculation, the Spivak Law Firm has submitted an accounting of the hours billed by various firm employees, tasks completed by those employees, and applicable billing rates. (*See* Doc. Nos. 56-4 at 154–16; 56-2 at 3.) The Spivak Law Firm employees who have worked on this matter include first-year secretaries with hourly rates of $150, a law clerk with an hourly rate of $200, eighth- through fifteenth-year paralegals with hourly rates ranging from $200 through $300, associate attorneys with rates ranging from $350 through $450, and attorney Spivak, with an hourly rate of $700. (Doc. No. 56-4 at 154–161.) The court finds that these rates are fair and reasonable in this case. *See Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2019 WL 316814, at *10

1    (E.D. Cal. Jan. 24, 2019) (accepting hourly rates of between $370 and $495 for associates, and

2    $545 and $695 for senior counsel and partners); *Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-

3    00902-DAD-SKO, 2021 WL 1813177, at *10 (E.D. Cal. May 6, 2021) (accepting hourly rate of

4    $150 for legal secretaries); *Mathein v. Pier 1 Imports (U.S.), Inc.*, No. 1:16-cv-00087-DAD-SAB,

5    2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) (accepting hourly rates of between $475 and

6    $575 for associates, and $675 and $750 for senior counsel and partners); *Emmons v. Quest*

7    *Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017)

8    (accepting hourly rates of between $330 and $550 for associates, and $500 and $720 for partners).

9    By contrast, the declaration by attorney Haines provides for an hourly rate of $725, but merely

10    lists his hours spent on this matter under two entries, one for 6.5 hours and one for 30.2 hours,

11    without listing the dates these hours were worked or the specific tasks performed on each date.

12    (Doc. No. 56-2 at 3.)  Without more detailed information, the court is not able to assess the

13    reasonableness of the United Employees Law Group's contributions to the total lodestar amount.

14    Nonetheless, even after adjusting the lodestar downward to remove the entirety of the lodestar

15    fees from the United Employees Law Group, the lodestar for the Spivak Law Firm's work on this

16    case alone is $72,553.83, well above the $58,333.00 requested in attorneys' fees here.

17          For the reasons set forth above, the court concludes that the lodestar cross-check supports

18    the requested award of $58,333.00 in attorneys' fees, an amount equal to one-third of the gross

19    settlement fund in this case.

20    **B.      Costs and Expenses of Class and Collective Counsel**

21          Additionally, class counsel seeks to recover the costs and expenses advanced while

22    prosecuting this litigation.  Such awards "should be limited to typical out-of-pocket expenses that

23    are charged to a fee-paying client and should be reasonable and necessary."  *In re Immune*

24    *Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include

25    reimbursements for:  "(1) meals, hotels, and transportation; (2) photocopies; (3) postage,

26    telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research;

27    (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees."  *Id.*

28    /////

1   Here, class counsel requests reimbursement in the amount of $5,482.94.[9]  (Doc. No. 56-1

2   at 23.)  The court has reviewed class counsel's declarations and finds all the charges incurred to

3   be reasonable.  Accordingly, the court will approve the reimbursement of costs and expenses in

4   the amount requested.

5   **C.      Incentive Award**

6   Courts frequently approve "service" or "incentive" awards in class action cases.  *West*

7   *Publ'g Corp.*, 563 F.3d at 958–59.  Generally speaking, incentive awards are meant to recognize

8   the effort of class representatives "for work done on behalf of the class, to make up for financial

9   or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

10  willingness to act as a private attorney general."  *Id*.  The district court evaluates each award

11  individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the

12  interests of the class, the degree to which the class has benefitted from those actions, . . . the

13  amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e]

14  fear[s of] workplace retaliation."  *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d

15  1004, 1016 (7th Cir. 1998)).

16  The courts of the Ninth Circuit typically find an award of $5,000 to be "presumptively

17  reasonable."  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000)

18  (endorsing $5,0000 service awards to named representatives); *Bellinghausen v. Tractor Supply*

19  *Co.*, 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R Us-Del., Inc. FACTA*

20  *Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with

21  the amounts courts typically award as incentive payments").  Higher amounts can be appropriate,

22  such as in employment actions, where a plaintiff risks retaliation or blacklisting by as a result of

23  suing her employer.  *See, e.g.*, *Buccellato v. AT&T Operations, Inc.,* No. 5:10-cv-00463-LHK,

24  2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011).

25

26  [9]  In plaintiff's pending motion for an award of attorneys' fees, costs, administrative expenses,
and an incentive award, class counsel requests $5,522.94 in expenses in some instances and

27  $5,482.94 in others.  (*See* Doc. No. 56-1 at 11, 23.)  At the final approval hearing, class counsel
clarified that this inconsistency is due to a scrivener's error and represented that class counsel

28  would seek the lower of these amounts for reimbursement.

Here, plaintiff Cavazos seeks an incentive award of $10,000 for his service in this action. (Doc. No. 56-1 at 24.)  Plaintiff contends that this amount is fair and reasonable compensation for the risks and efforts he has undertaken as the representative plaintiff in this action.  (Doc. No. 56-3 at 3.)  He submits that the requested incentive award "is not equal to the harm to [his] future career prospects" that may arise from there being an existing a public record of him bringing a class action complaint against his employer.  (*Id.* at 5.)  Moreover, plaintiff Cavazos undertook the risk that if the case was lost, he could have been ordered to pay defendant's costs and attorneys' fees.  (*Id.*)  Plaintiff's declaration also states that he has demonstrated his commitment to the settlement class in this case by, *inter alia*, "retaining experienced counsel, providing counsel with documents and extensively speaking with them to assist in identifying the claims asserted in this case, submitting to two full days of examination by deposition, . . . contacting the Settlement Class Members and gathering information from them, [and] meaningfully participating in the mediation and subsequent negotiations" that resulted in the settlement.  (*Id.* at 4–5.)  Specifically, plaintiff contends that over the past three-and-a-half years, he spent 40.32 hours working on the case.  (*Id.* at 7–8.)

Although the incentive award sought—$10,000 or 5.7% of the gross settlement amount— is on the higher end, particularly for the relatively low number of hours expended by plaintiff on this case, it is not unreasonable or beyond the norm for this district, particularly given the average individual settlement payment of $2,216.16 in this case.  *See, e.g.*, *Castro*, 2021 WL 2042333, at *13 (granting $10,000 award for 70 hours of work over three years, reflecting 0.025% of the gross settlement amount); *Acosta v. Evergreen Moneysource Mortg. Co.*, No. 2:17-cv-00466-KJM-DB, 2019 WL 6051117, at *18 (E.D. Cal. Nov. 15, 2019) (granting $10,000 award for 40 hours of work, reflecting 2.85% of the gross settlement amount); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500).  In light of plaintiff's supporting declaration detailing his assistance with this case, the court finds that the requested incentive payment of $10,000 to

/////

1  plaintiff Cavazos is fair and reasonable and does not destroy the adequacy of class representation

2  in this case.  Accordingly, the court will award the incentive payment as requested.

3  **D.      Settlement Administrator Costs**

4        The court previously approved the appointment of Simpluris as the settlement

5  administrator in this action.  (Doc. No. 52 at 41.)  According to the declaration of Christina

6  Fowler, Case Manager for Simpluris, the total cost for administration of this settlement, including

7  fees incurred and future costs for completion, is $4,453.00.  (Doc. No. 56-4 at 212.)  The court

8  finds these administration costs reasonable and will direct payment in the requested amount.

9                                    **CONCLUSION**

10       For the reasons stated above:

11  1.      Plaintiff's motion for final approval of the class and collective action settlement

12          (Doc. No. 57) is granted, and the court approves the settlement as fair, reasonable,

13          and adequate;

14  2.      Plaintiff's motion for an award of attorneys' fees and costs, incentive award, and

15          settlement administrator costs (Doc. No. 56) is granted;

16  3.      The court awards the following sums:

17          a.      Class counsel shall receive $58,333.00 in attorneys' fees and $5,482.94 in

18                  expenses;

19          b.      Plaintiff Cavazos shall receive $10,000.00 as an incentive payment;

20          c.      Simpluris shall receive $4,453.00 in settlement administration costs; and

21          d.      The parties shall direct payment of 75 percent of the settlement allocated to

22                  the PAGA payment, or $3,000, to the California Labor and Workforce

23                  Development Agency as required by California law, and the remainder of

24                  the PAGA payment, or $1,000, shall be included in the net settlement fund;

25  4.      The parties are directed to effectuate all terms of the settlement agreement and any

26          deadlines or procedures for distribution set forth therein;

27  /////

28  /////

27

5.   This action is dismissed with prejudice in accordance with the terms of the parties' amended settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

6.   The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **July 25, 2022**

_____

UNITED STATES DISTRICT JUDGE